## STATE BOARD OF MEDICAL EXAMINERS *et al. v.* LEWIS.

1. Section 14 of the act approved August 18, 1913 (Acts 1913, p. 101), entitled, "An act to abolish the present State Board of Medical Examiners and to establish a composite Board of Medical Examiners for the State of Georgia; to define its duties and powers," etc., is un-

constitutional and void in so far as it provides for the trial and con-
viction of a licensed physician of certain specified offenses, and the
consequent revocation of his license; as the section, in so far as it
provides for such trial and the penalty upon conviction, is violative
of the due-process clause of the Federal and State constitutions, in-
asmuch as no provision is made in that section, or elsewhere in the
act, for due notice to and hearing of the accused.

2. Where a licensed physician was tried and convicted under section 14
of the act just referred to, and appealed to a jury in the superior
court, where he was again convicted, and then sued out a writ of
error to the Court of Appeals of this State, where the conviction was
sustained, he could subsequently attack the judgments of conviction in
the superior court and before the Board of Medical Examiners, and,
upon proper petition to a court of equity, prevent the enforcement of
the penalties imposed by the act upon conviction.

No. 1524.　January 16, 1920.

Injunction.　Before Judge Irwin.　Carroll superior court.
June 12, 1919.

M. W. H. Lewis, a practicing physician, was notified to appear
before the State Board of Medical Examiners, and to answer
certain charges preferred against him by that board. He appeared
with his counsel; evidence was introduced pro and con; and the
board found the charges against him true, revoked his license, and
ordered that his name be removed from the records of the clerk
of the superior court of his county. He appealed from the judg-
ment of the board to Carroll superior court, filing an appeal bond.
The board then, under the provisions of the statute, filed in the
superior court specifications of the charges against Lewis. Lewis
answered, the case was tried before a jury, and he was found guilty
on the first specification, the only one insisted on by the board.
Lewis then excepted to the decision of the superior court; and the
Court of Appeals of this State rendered judgment affirming the
judgment of the superior court. 23 *Ga. App.* 647 (99 S. E. 147).
Before the judgment was executed and the name of Lewis stricken
from the records of Carroll superior court, he filed his equitable
petition in that court, alleging that the act of the General Assembly
above referred to, under which he was tried and convicted, is un-
constitutional for certain reasons, and prayed that execution of
the judgment be restrained. To the petition thus filed the de-
fendants filed a general demurrer and an answer. After hearing
evidence and argument, the judge rendered a decree restraining
the State Board of Medical Examiners from interfering with the

petitioner in the practice of his profession, until the case is finally determined by a jury in Carroll superior court, stating in his order that he held the act creating the State Board of Medical Examiners to be unconstitutional, and all acts done by the board and by the courts thereunder to be null and void, the courts being without jurisdiction. To this decree the defendants excepted.

*S. Holderness,* for plaintiffs in error.

*Boykin & Boykin,* contra.

BECK, P. J. By an act approved August 18, 1913 (Acts 1913, p. 101), entitled "An act to abolish the present State Board of Medical Examiners, and to establish a composite Board of Medical Examiners for the State of Georgia; to define its duties and powers," etc., the General Assembly created the State Board of Medical Examiners, and conferred upon them enumerated powers and duties. Section 14 of the act declares that the board may refuse to grant a license to practice medicine in this State, or may cause a licentiate's name to be removed from the records in the office of the clerk of the court, on several stated grounds; and that the board may, upon satisfactory proof made that any licentiate has been guilty of any of the offenses defined in the grounds enumerated, suspend said licentiate from the practice of medicine and call in his license upon a majority vote of the board; "provided, however, that said suspended physician shall have a right to appeal to a jury in the superior court of the county of his residence, and it shall be the duty of said board to prefer in writing the charge or charges against said physician, which shall be tried by a jury regularly empaneled and sworn. Said physician, the defendant in said proceedings, shall be entitled to an appeal to the Supreme Court. In the event of conviction by the jury of any of the charges preferred, the license of said physician shall be revoked." This proviso is followed by other provisions relative to the restoration of the physician whose license has been revoked or called in  The petition in this case attacks the provisions of this section, upon stated constitutional grounds; among others, that it is violative of the due-process clauses of our State and Federal constitutions, in that no provision is made in this particular section of the act, or elsewhere, for notice to him of the action to be taken by the board, as a result of which the physician's license might be revoked or called in, and that no provision for a hearing is made either in

this section or in any other part of the act. In view of the ruling made in a recent case, *Mott* v. *State Board of Optometry,* 148 *Ga.* 55 (95 S. E. 867), the objection made to this section of the act is good. From that case it appears that Mott filed his petition for mandamus and other relief against the State Board of Examiners in Optometry, and in his petition attacked section 7 of the act approved August 7, 1916 (Acts 1916, p. 83), entitled, "An act to establish a Board of Examiners in Optometry, to define its duties, powers," etc. In section 7 it is provided that the board of examiners shall refuse to issue the certificate of registration. provided in this act to any person who shall have been guilty of unprofessional and dishonest conduct, "provided an, appeal may be taken from the action of the board to the superior court of the county in which the certificate was refused or revoked by the board." The attack upon this section of the act of 1916 was substantially the same as that made upon section 14 of the act of 1913 in the present case. In the course of the opinion it was said: "Neither the portion of the act quoted above nor any other portion applicable to Mott makes any provision whatever for notice or hearing before condemnation, which is contrary to the rights guaranteed by both the State and Federal constitutions. Civil Code, §§ 6359, 6700. 'The fundamental idea in due process of law is that of 'notice' and 'hearing.' It means that the citizen must be afforded notice and hearing before he is condemned. There must be a hearing first, and judgment can be rendered only after trial.' *Arthur* v. *State,* 146 *Ga.* 828 (92 S. E. 637). The benefit of notice and a hearing before judgment is not a matter of grace, but is one of right. *Shippen Lumber Co.* v. *Elliott,* 134 *Ga.* 699, 702 (68 S. E. 509) ; Security etc. Co. *v.* Lexington, 203 U. S. 333 (27 Sup. Ct. 87, 51 L. ed. 204). Without notice and opportunity to be heard, there is no jurisdiction to pass judgment. The act contains the following: 'Said board shall prescribe such rules, regulations, and by-laws for its own proceedings and government as will carry into effect the provisions of this act;' and it is insisted that this provision will'save the said act from being unconstitutional and void.' The provision is not sufficient to comply with the constitutional requirements. Even if it be conceded that a constitutional act can be passed which requires the board to provide due notice and hearing before judgment, this provision does not

in terms make it mandatory upon the board to give due notice and hearing before judgment in the class of cases which includes petitioner. The petitioner having complied fully with the requirements of the statute, the issue was, in contemplation of law, closed as to him. The action of the board as complained of was in effect the raising of a new issue by them, of which the petitioner had no notice until after judgment. The provision in the act for an appeal to the superior court after the board has rendered judgment of condemnation is not a compliance with the mandate of the constitution. It is not conceivable that the constitutional guaranty is satisfied when a hearing is provided only after judgment in such a case. To deprive one of the right to practice his profession is to subject him to humiliation, mortification, and injury, which the constitution will not permit except in conformity with the law of the land and on evidence sufficient to authorize such a finding by an impartial tribunal. To say that one may be adjudged guilty of 'grossly unprofessional and dishonest conduct,' for the reasons stated by the board in this case, is to demonstrate the arbitrary power which the act undertakes to lodge in the State Board of Optometry."

Neither in that section of the act of 1913 which we have under review nor in any other portion of the act is provision made for notice to the accused and a hearing; and though in this particular case the accused might have appeared and submitted evidence, that did not cure the defect in the act itself. If such a hearing was granted him, it was by grace, and not by virtue of the requirements of the law. Nor did the right of appeal to a jury in the superior court cure the defect in the law, as was expressly decided in the *Mott* case. An extended discussion of the question is unnecessary. The statute under which the defendant was tried by the State Board of Medical Examiners being invalid and void on the constitutional grounds pointed out, the proceedings before that board, which resulted in finding the defendant guilty of certain specified offenses, were nugatory, and the finding was without effect and void; and the appeal and trial before a jury under the provisions of the section in the statute set forth above could not have the effect of giving validity to the proceedings and findings before the board, nor could the finding of the jury in the superior court upon the appeal be treated otherwise than as void, as the statute under

which the trial was had was itself invalid. Nor could the fact that the case was carried to the Court of Appeals of this State, where the judgment of the court below was affirmed, give validity to the proceedings, or bar the defendant from asserting, as he is seeking to assert here, that all proceedings had against him were nugatory. It is cogently argued by counsel for the plaintiffs in error that if the act of the legislature attacked as unconstitutional could be so held for any of the reasons set out in the plaintiff's petition, as to him the act is good and binding, because he appealed his case from the State Board of Medical Examiners to the superior court of Carroll county, and then carried his case to the Court of Appeals of Georgia; and that he thereby waived the constitutionality of the law, and this waiver was binding. The argument is not without force. But this court has held that "One indicted and tried under an unconstitutional statute may, even after final conviction, obtain his discharge from custody on a writ of habeas corpus." *Moore* v. *Wheeler,* 109 *Ga.* 62 (35 S. E. 116). It appears from the report of the case just cited that the grand jury of Paulding county returned an indictment against Moore, charging him with the offense of selling spirituous and intoxicating liquors, and that he entered a plea of guilty and was sentenced, but subsequently sued out a writ of habeas corpus, whereby he sought to be discharged from the custody, and in his application for the writ he alleged that the indictment was void because based upon an act alleged to be unconstitutional. In the case of *Embry* v. *State,* 109 *Ga.* 61 (35 S. E. 116), the law upon which the indictment was founded had been held unconstitutional; and this court held that a verdict of guilty was therefore unauthorized. In the *Moore* case, supra, the court said: "It seems to be now well settled that when one is indicted and tried under an unconstitutional statute, he may, even after final conviction and sentence, obtain his discharge from custody on a writ of habeas corpus [citing numerous decisions in other jurisdictions]. 'An unconstitutional enactment is never a law; and if there can be a case in which a conviction is illegal and without jurisdiction, it seems that such a case is presented when it appears either that there is no law making criminal the alleged crime, or authorizing its prosecution in the court wherein the sentence has been imposed.' "

In the case of *Griffin v. Eaves,* 114 *Ga.* 65 (39 S. E. 913), the ruling made in the *Moore* case was upheld.  The court said: "Counsel for plaintiff in error, in support of his contention that the defendant in error can not be discharged from custody under habeas corpus, relies upon *Daniels* v. *Towers,* 79 *Ga.* 785 [7 S. E. 120], wherein it is held: 'After a judgment of conviction for felony has been affirmed by the Supreme Court on writ of error brought by the convict, the legality of his conviction can not be drawn in question by a writ of habeas corpus sued out by him, or by any other person in his behalf, save for want of jurisdiction appearing on the face of the record as brought from the court below to the Supreme Court.  Such affirmance implies that he was tried by a court of competent jurisdiction legally constituted, and nothing to the contrary can be shown otherwise than by inspection of the record.'  We do not think that decision is in conflict with the ruling made in *Moore* v. *Wheeler,* supra, or contravenes anything we have said in the present case.  While it is an elementary principle that errors and irregularities, not jurisdictional, can not be examined or inquired into on habeas corpus, that on questions of law and fact within the court's jurisdiction its decision is conclusive, and however erroneous its judgment may be it can not be reviewed collaterally on such writ, yet, as we have seen, it is firmly established that where one is convicted and sentenced under an indictment founded upon an unconstitutional or repealed statute, the court had no jurisdiction to render the particular judgment, and a discharge may be granted on habeas corpus, where the invalidity of the statute appears from the face of the indictment.  The court in *Daniels* v. *Towers,* supra, recognized the rule that the legality of a conviction could be drawn in question by habeas corpus when the want of jurisdiction in the court appeared on the face of the proceedings."  See also *Collins* v. *Hall,* 92 *Ga.* 411 (17 S. E. 622).

It is further urged in this case, that even if the principles which we have restated above, supporting them by quotations from decisions rendered by this court, are sound in criminal cases, the doctrine can not be applied to civil cases; and it is insisted that the proceedings against the defendant in error, which resulted in his conviction and the revocation of his license, are civil proceedings.  We cannot assent to this proposition in its entirety.  The

result, it is true, did not subject the defendant to imprisonment in the chain-gang or the penitentiary, and resulted merely in the revocation of his physician's license and the striking of his name from the record kept in the office of the clerk of the superior court. But this itself was a penalty, and the proceedings are in the nature of criminal proceedings. The proceedings were certainly quasi-criminal in character. In the section of the statute which authorizes the proceedings it is provided that "said suspended physician shall have a right to appeal to a jury in the superior court of the county of his residence, and it shall be the duty of said board to prefer in writing the charge or charges against said physician, which shall be tried by a jury regularly empaneled and sworn. Said physician, the defendant in said proceedings, shall be entitled to an appeal to the Supreme Court. In the event of conviction by the jury of any of the charges preferred, the license of said physician shall be revoked." The language of this provision, making it the duty of the board to "prefer charges against the physician," and providing for the revocation of his license "in the event of conviction" by the jury, distinctly imports a trial in a criminal case; and the doctrine stated in the cases from which we have quoted is plainly applicable to the case under consideration, without giving either to the decisions from which the quotations are taken or to the statute under which the defendant in error was tried a strained construction.

It follows from what we have said that the petitioner was entitled to injunctive relief against the threatened action of the State Board of Medical Examiners, which, if carried out, would result in revoking and cancelling his license and thereby depriving him of the right to pursue his profession; and it requires no argument to demonstrate that the injury which would thus be inflicted would be irreparable in its character. The court below did not err in granting the injunctive relief complained of.

It is unnecessary to consider other objections raised to the statute in question, which are based upon constitutional grounds.

*Judgment affirmed. All the Justices concur, except Atkinson, J., disqualified.*