STATE BOARD OF MEDICAL EXAMINERS *et al. v.* DR. BEN
FRIEDMAN.*

(*Nashville.* December Term, 1923.)

1. **INJUNCTION.** Physician may seek injunctive relief against revocation of license pursuant to unconstitutional statute.

Physician whose license is revoked by state board of medical examiners pursuant to unconstitutional statute may seek injunctive relief. (*Post, p.* 164.)

Acts cited and construed: Acts 1901, ch. 78.

Cases cited and approved: Gilbreath v. Willett, 251 S. W., 910; House v. Creveling, 147 Tenn., 589; State v. Bratton, 253 S. W., 705.

2. **INJUNCTION.** Lies, if revocation of physician's license is void for failure to follow statutory provisions.

If state board of medical examiners' revocation of physician's license is not merely irregular, but void for failure to follow statutory provisions, injunction will lie. (*Post, pp.* 164, 165.)

Cases cited and approved: Alexander v. Henderson, 105 Tenn., 431; Smoky Mt. Co. v. Lattimore, 119 Tenn., 620; Reagan v. Farmer's Loan & Trust Co., 154 U. S., 362; Raymond v. Chicago Union Traction Co., 207 U. S., 20; Prentis v. Atlantic Coast Line, 211 U. S., 210; Bacon v. Rutland R. R. Co., 232 U. S., 134; Greene v. Louisville & Interurban R. Co., 244 U. S., 499; Waite v. Macy, 246 U. S., 606;

---

*On power to revoke license of physician and surgeon, see note in 1 L. R. A. (N. S.), 811.

On license to engage in profession or occupation as creating a vested right to continue same, see note in 8 L. R. A. (N. S.), 1272.

Authorities passing on the question of furnishing or prescribing by physician of habit-forming drugs, see note in L. R. A. 1918E, 669.

State Bd. of Medical Examiners v. Friedman.

3.  **INJUNCTION. Mandatory injunction rarely granted.**

Mandatory, rather than prohibitory, injunction will rarely be granted. (*Post, p.* 165.)

Case cited and approved: Bank & Trust Co. v. Hotel Co., 124 Tenn., 649.

4.  **INJUNCTION. Mandamus. Not interchangeable remedies.**

Injunction and mandamus are not interchangeable remedies. (*Post, p.* 165.)

Cases cited and approved: Brown v. Ice Co., 122 Tenn., 239; Hawkins v. Kercheval, 78 Tenn., 535.

5.  **INJUNCTION. Mandamus. Will lie where proceedings of board or inferior tribunal are void; certiorari not being exclusive remedy.**

Where proceedings of board or inferior tribunal are not merely irregular, but void, as based on unconstitutional statute or failing to follow statutory provisions, injunction or mandamus, according to which is appropriate to relief sought, will lie; *certiorari* not being exclusive remedy. (*Post, pp.* 165, 166.)

Cases cited and approved: Smoky Mt. Co. v. Lattimore, 119 Tenn., 620; Hawkins v. Kercheval, 78 Tenn., 535.

6.  **CONSTITUTIONAL LAW. Right to practice medicine is property right.**

Right to practice medicine is property right, of which one cannot be illegally deprived. (*Post, pp.* 166-168.)

Cases cited and approved: State Board v. Lewis, 149 Ga., 716; Meffert v. Packer, 66 Kan., 710.

Cases cited and distinguished: People v. Love, 298 Ill., 304; Butchers' Union Co. v. Crescent City Co., 111 U. S., 746; Matthews v. Murphy, 63 S. W., 785; Mott v. Ga. State Board, etc., 148 Ga., 55.

7.  **CONSTITUTIONAL LAW. License to practice not contract conferring vested right on holder.**

License to practice medicine is not binding, valid contract with State, conferring vested right on holder. (*Post, pp.* 168-177.)

Cases cited and approved: Reetz v. Michigan, 188 U. S., 505; Hawker v. N. Y., 170 U. S., 189; State v. Hovorka, 100 Minn., 249.

State Bd. of Medical Examiners v. Friedman.

8. **CONSTITUTIONAL LAW.** Attack on statute for failure to provide hearing on revoking license held not open to one who had hearing.

Physician bringing *certiorari*, as he may do, findings of state board of medical examiners, revoking his license, pursuant to Acts 1901, chapter 78, after trial on merits, cannot subsequently attack constitutionality of statute on ground that no provision made therein for notice and hearing on petition for mandatory injunction to compel reinstatement. (*Post, pp.* 168-177.)

Acts cited and construed: Acts 1901, ch. 78; Acts 1907, ch. 602, sec. 30.

Cases cited and approved: State Board of Medical Examiners v. Lewis, 149 Ga., 716; Moore v. Wheeler, 109 Ga., 62; Embry v. State, 109 Ga., 61; Griffin v. Eaves, 114 Ga., 65; Palmer v. McMahon, 133 U. S., 660; Kendrick v. State, 3 Tenn., 474; Duggan v. McKinley, 15 Tenn., 21; William v. Eggleston, 170 U. S., 304; C., B. & Q. R. Co. v. Nebraska, 170 U. S., 57; Security Trust & Safety Vault Co. v. Lexington, 203 U. S., 323; Stuart v. Palmer, 74 N. Y., 183; McMillen v. Anderson, 95 U. S., 37; Hagar v. Reclamation District, 111 U. S., 701.

Cases cited and distinguished: Mott v. Ga. State Board of Examiners, etc., 148 Ga., 55; Bragg v. Yeargin, 145 Tenn., 643; Fertilizer Co. v. McFall, 128 Tenn., 645; Staples v. Brown, 113 Tenn., 639; Security Trust Co. v. Lexington, 203 U. S. 323.

9. **PHYSICIANS AND SURGEONS.** Violation of Anti-Narcotic Act not evidence of ''moral turpitude'' authorizing revocation of license.

State board of medical examiners cannot revoke physician's license merely on ground that his conviction and sentence to federal penitentiary for violating Harrison Anti-Narcotic Act (U. S. Comp. St., sections 6287g-6287q) by selling morphine evidenced "moral turpitude," within Acts 1901, chapter 78, section 16, subsec. 6, though any violation of former act is felony, especially in view of Acts 1919, chapter 105, permitting physicians to prescribe morphine to patients in considerable quantities. (*Post, pp.* 177-180.)

State Bd. of Medical Examiners v. Friedman.

Acts cited and construed: Acts 1923, ch. 2; Acts 1921, ch. 17; Acts 1897, ch. 77; Acts 1919, ch. 105.

Cases cited and approved: Ex parte Marshall, 207 Ala., 566; Tucker v. State, 257 S. W., 850; Pope v. State, 258 S. W., 775; U. S. v. Doremus, 249 U. S., 86; Webb v. U. S., 249 U. S., 96; U. S. v. Woods, 224 Fed., 278.

10. **INJUNCTION,** Failure to attach copy of alleged void proceedings to bill held not ground for demurrer.

Failure to attach to bill for mandatory injunction to compel reinstatement of physician after revocation of license by state board of medical examiners copy of alleged null and void proceedings of board is not valid ground for demurrer; defendant's remedy, if any, being by motion. (*Post, pp.* 180-182.)

Case cited and approved: Ramsey v. Temple, 71 Tenn., 252.

11. **APPEAL AND ERROR.** Physician's suit for reinstatement after revocation of license remanded for answer and proof on question of moral turpitude.

Suit to compel reinstatement of physician, whose license was revoked by state board of medical examiners, remanded for answer and proof on question whether violation of Harrison Anti-Narcotic Act (U. S. Comp. St., sections 6287g-6287q) is "moral turpitude," within Acts 1901, chapter, 78, section 16, subsec. 6, because of possibility that defendants stood on demurrer in belief that record of proceeding before state board constituted part of bill, to which it was not made exhibit. (*Post, pp.* 182, 184.)

Case cited and approved: Smith v. State, 9 Tenn., 228.

FROM SHELBY

*Headnote 1.   32 C. J., Injunctions, § 385; 2.   32 C. J., Injunctions, § 389; 3.   32 C. J., Injunctions, § 5; 4.   32 C. J., Injunctions, § 1; 26 Cyc, Mandamus, p. 143; 5.   32 C. J., Injunctions, § 386; 26 Cyc, Man·

damus, p. 168; 6. 30 Cyc, Physicians and Surgeons, p. 1547; 7. 30 Cyc, Physicians and Surgeons, p. 1555 (1925 Anno); 8. 12 C. J., Constitutional Law, § 177; 9. 30 Cyc, Physicians and Surgeons, p. 1555; 10. 32 C. J., Injunctions, § 564; 11. 4 C. J., Appeal and Error, § 3239.

Appeal from the Chancery Court of Shelby County.— Hon. F. H. Heiskell, Chancellor.

J. W. Farley, for appellants.

Dr. Ben Friedman, in *pro per*.

Mr. Malone, Special Justice, delivered the opinion of the Court.

The original bill in this case was filed by Dr. Ben Friedman, a citizen of Memphis, Tenn., to review the action of the state board of medical examiners in revoking his license to practice medicine, and to compel his reinstatement as a practitioner.

The board demurred to the bill on various grounds, hereinafter to be noted, and the chancellor overruled the demurrer.

The members of the board thereupon refused to plead further, standing on their demurrer, and a final decree was entered in the case, adjudging that the action of the defendants in revoking the license of complainant was unwarranted by law, and of no binding force and effect, and directing that the clerk and master issue an order to the defendants, directing them to reinstate the complainant upon their records as a practitioner of medicine in the State of Tennessee.

State Bd. of Medical Examiners v. Friedman.

Inasmuch as complainant raises certain constitutional questions in the original bill, and by amended bill disputes the constitutionality of the statute (chapter 78, of the Acts of 1901), under which the board was organized, and from which its authority was derived, the case comes direct to this court.

The allegations of the original bill are, in substance, as follows:

That on April 26, 1918, complainant received notice that the state board of medical examiners had revoked his license to practice medicine, on account of his conviction in the district court of the United States, for violation of the Harrison Anti-Narcotic Act (U. S. Comp. St., sections 6287g-6287q). This action, it is alleged, was taken without any notice to complainant.

That on May 23, 1918, complainant filed his original bill in the chancery court at Memphis, seeking a review of this action, by *certiorari,* and for other relief.

That on June 14, 1918, the board of medical examiners, by their solicitor, agreed to a decree in the case, reciting that the statements contained in the original bill were true, and that complainant was entitled to have the order of the board vacated, and his license restored, as prayed in the bill. It was thereupon so decreed; the order, however, reciting that nothing therein contained should affect the question whether complainant had been convicted of a crime involving moral turpitude.

That thereafter, on the ——— day of ———, 1918, the defendants composing the state board gave complainant notice to appear, together with a copy of the charge against him, viz., that he had been convicted in a court of the United States of an offense involving moral turpi-

tude. The hearing was set before the board at Nashville, Tenn., on the ——— day of ———, 1918.

. The bill then proceeds as follows:

"Complainant appeared before said board and resisted said charge on the ground that the offense of which he had been convicted was not one involving moral turpitude, but said board revoked his license to practice medicine in Tennessee, and said revocation is still in force against him; and said board, through its secretary, Dr. A. B. De Loach, of Memphis, refused to vacate the same and restore to complainant his license to practice medicine in Tennessee, without which complainant cannot practice medicine in Tennessee without violating the law.

"Complainant believed he was right and within the law in what he did, which was writing prescriptions for incurable narcotic addicts to procure the drug, and felt so strongly he was right that he contested the conviction to the supreme court of the United States, where it was affirmed, and soon after the revocation of his license by said defendant board he commenced serving his sentence, and served twenty-eight months in the federal prison in Atlanta, Ga., being released a short while only, and this is the reason complainant has not sooner taken proceedings to vacate the action of said board, and have his license restored to him. However, complainant did, a short while before commencing serving his sentence in the federal prison in Atlanta, Ga., file a petition for *certiorari* and *supersedeas* for a review of the action of said board by the circuit court of Davidson county in Nashville, and while complainant was confined in the federal prison at Atlanta, and unable to prosecute or look after his said case, the same was on the 10th day of July, 1920,

dismissed by the circuit court in Nashville, and of which complainant knew nothing until his release from prison a short while ago.

"After complainant's conviction in the federal court of a violation of the Harrison Narcotic Act, he was indicted, under the State law, in the criminal court of Shelby county for a similar offense, and was convicted in the criminal court of Shelby county, but upon appeal to the supreme court the case was reversed and dismissed on the ground that what complainant did (write a prescription for five bottles of morphine) for an addict did not constitute a violation of the State law.

"Complainant desired to make application to the State board for a restoration of his license, and applied to its secretary in Memphis, Dr. A. B. De Loach, and was informed to (by) him that he would be advised ten days in advance of the meeting of the board; after waiting some time, complainant wrote two letters to Dr. De Loach again, inquiring when the board would meet, but received no reply to either of his letters, and he then had his brother call up Dr. De Loach for the information, and he was informed by Dr. De Loach that the board had met and adjourned until next year. Complainant then had a friend make inquiry, and ascertained that the board was to meet on the 3d day of July, 1922, in Nashville. He at once went to Nashville, and applied to the board of medical examiners for a restoration of his license, and was informed later in the day, by its secretary, Dr. De Loach that the board had refused his application."

After setting forth the grounds prescribed in the act (Acts of 1901, chapter 78), for the revocation of a practitioner's license, one of which is "conviction of any

offense involving moral turpitude,'' complainant alleges that a conviction in the federal courts for a violation of the Harrison Anti-Narcotic Act is not an offense involving moral turpitude.

Complainant claims:

(a) That the right to practice a profession is a property right.

(b) That the meaning of the phrase ''moral turpitude'' is well settled in law, and said board has no right to place its own interpretation upon it, thereby depriving complainant of his property right.

(c) That the illegal and unwarranted action of the board in so doing is a violation of the Fourteenth Amendment to the Constitution of the United States.

Complainant then alleges that ''he is not guilty of anything that would authorize or justify said defendant board to revoke or cancel his license to practice medicine in Tennessee.''

It is further alleged: ''There being no provision in said act creating said defendant board, for an appeal from its findings, unless the same be reviewed and relief granted, or its judgments annulled and quashed, as void without force and effect and complainant placed *in statu quo,* a great, permanent, and irreparable damage and injury will have been done complainant, from which he would otherwise have no relief.''

The bill prays for a writ of *certiorari,* to the end that the proceedings of the board be certified to that court, and its action there reviewed, set aside and vacated.

In the alternative complainant prays that, if not entitled to that relief, an order be made, adjudging that the action of the board, based solely upon conviction of

an offense not involving moral turpitude, was unwarranted in law, and a violation of complainant's property rights under the Fourteenth Amendment to the Constitution of the United States, and that a mandamus issue, directing that the board reinstate complainant as a practitioner, etc.

On August 21, 1922, complainant filed an amended bill, in which it is charged that:

"Nowhere in said act is any provision made for a notice to the accused of charges preferred against him, or to give him a hearing and trial of any such charges."

The same insistence is advanced in other portions of the amended bill, and it is charged that "this section of said act is in violation of the due process clauses of our State and federal Constitutions," and especially the first section of the Fourteenth Amendment to the Constitution of the United States.

Complainant then charges: "That the action of said State board of medical examiners, was invalid and void on the constitutional grounds pointed out, and its proceedings, which resulted in finding complainant guilty of certain charges, as set out in the original bill herein, were nugatory and without effect and void, as its action was based solely upon an unconstitutional and void act, as hereinabove set out."

Complainant prays: "That said act of the legislature of Tennessee, 1901, chapter 78, be declared unconstitutional and void, and the action of said defendant board thereunder, declaring complainant's license to practice medicine revoked and annulled, be decreed nugatory, void, and of no binding effect, and that said defendant board be ordered and commanded by proper injunc-

tive process to reinstate complainant on its records as a licensed practicing physician and surgeon in the State of Tennessee.''

The defendants demurred to the original and supplemental bills on the following grounds:

''First. There is no equity in the bill.

''Second. This court had no jurisdiction over the subject-matter.

''Third. This court has no jurisdiction thereof, the complainant having a plain, adequate and complete remedy at law, by *certiorari* to the court.

''Fourth. The proceedings complainant attacks is a decree of the State board of medical examiners revoking his license to practice medicine in the State of Tennessee, which proceedings are *quasi*-judicial in character, and are not subject to review in this court.

''Fifth. The bill fails to show oppression, fraud, or illegality on the part of the board.

''Sixth. The board in revoking complainant's license did not deprive complainant of a property right, but simply denied him a privilege.

''Seventh. The complainant has failed to attach to the bill a copy of the proceedings which he attacks as being null and void and of no binding effect.

''Eighth. The defendant board had absolute and complete jurisdiction over the subject-matter, said jurisdiction being conferred on said defendant board by chapter 78, Acts of the legislature of 1901.

''Ninth. The procedure by the board and revocation of said license was according to due process of law.

''Tenth. A license to practice medicine is not a contract, and the revocation of said license by the board

was not the taking of property without due process of law.

"Eleventh. The complainant does not show that he is a person to whom said board should have granted a license to practice medicine, and therefore the board was justified in revoking said license after the same was granted.

"Twelfth. The acts of the complainant as a physician as shown by the bill are such that the board should have exercised its power in revoking said license.

"Thirteenth. Complainant has been convicted of a crime from which it clearly appears that complainant is an unfit person to practice medicine.

"Fourteenth. It appears from the bill that the complainant has been guilty of such unprofessional and dishonorable conduct as would justify the board in revoking said license.

"Fifteenth. Under the facts as stated in the bill it was the duty of the board to revoke said license.

"Sixteenth. The board was entirely within its legal rights in revoking said license to practice medicine issued to complainant.

"Seventeenth. The action of the board was such as was contemplated by the legislature in vesting the board with the certain powers.

"Eighteenth. The procedure of said board in revoking said license is sufficient under the statute.

"Nineteenth. The board in the exercise of its discretionary power has not acted unreasonable, and has been free from fraud, compulsion, and oppression.

"Twentieth. The board, having power to grant said license, is vested with full power upon proper showing to revoke said license.

"Twenty-first. The granting of a license to practice medicine did not vest the complainant with a property right.

"Twenty-second. The granting of a license to practice medicine to be issued by said defendant board is done in the exercise of the police power of the State for the public good, and confers no property right on the license, and creates no contract with the State.

"Twenty-third. The defendant board in revoking complainant's license to practice medicine in this State did not act as judicial tribunal in the strict sense of the word, but in a *quasi*-judicial capacity, and acting as such is not governed by the same technical rules applicable to law courts, and may fix its own rules of procedure."

Appellants do not insist here upon all the grounds of their demurrer, and we shall discuss only the determinative issues.

1. No serious insistence against the chancery court's jurisdiction is made by the appellees. If the board was acting pursuant to an unconstitutional statute, the complainant plainly had the right to seek injunctive relief, as was done in the amended bill. *Gilbreath* v. *Willett* (Tenn., 1923), 251 S. W., 910, 28 A. L. R., 1147; *House* v. *Creveling* (1923), 147 Tenn., 589, 250 S. W., 357; *State* v. *Bratton* (Tenn., 1923), 253 S. W., 705.

And, even though the statute be constitutional, if the action of the board was void (not merely irregular) for failure to follow its provisions, injunction will lie.

*Alexander* v. *Henderson* (1900), 105 Tenn., 431, 58 S. W., 648 (officer undertaking to seize property for delinquent taxes without obtaining certified list from county trustee).

*Smoky Mt. Co.* v. *Lattimore* (1907), 119 Tenn., 620, 632, 633, 634, 635, 105 S. W., 1028 (judgment of the State board of assessors held void, and properly subject to injunction, because less than a quorum undertook to act).

The rule in the federal courts seems even broader. *Reagan* v. *Farmer's Loan & Trust Co.*, 154 U. S., 362, 390, 14 Sup. Ct., 1047, 38 L. Ed., 1014; *Raymond* v. *Chicago Union Traction Co.*, 207 U. S., 20, 38, 28 Sup. Ct., 7, 52 L. Ed., 78, 12 Ann. Cas., 757; *Prentis* v. *Atlantic Coast Line,* 211 U. S., 210, 230, 29 Sup. Ct., 67, 53 L. Ed., 150; *Bacon* v. *Rutland R. R. Co.*, 232 U. S., 134, 34 Sup. Ct., 283, 58 L. Ed., 538; *Greene* v. *Louisville & Interurban R. Co.*, 244 U. S., 499, 37 Sup. Ct., 673, 61 L. Ed., 1280, Ann. Cas., 1917E, 88; *Waite* v. *Macy,* 246 U. S., 606, 610, 38 Sup. Ct., 395, 62 L. Ed., 892.

The injunctive relief sought in this case seems mandatory rather than prohibitory. Such an injunction will rarely be granted. *Bank & Trust Co.* v. *Hotel Co.* (1911), 124 Tenn., 649, 658, 139 S. W., 715, 39 L. R. A. (N. S.), 580.

But the bill also prays for a mandamus; and, while the two remedies are not interchangeable (*Brown* v. *Ice Co.,* 122 Tenn., 239, 242, 122 S. W., 84, 19 Ann. Cas., 308), yet it was said in that case, *arguendo,* that injunction might be united with mandamus ''to hold matters *in statu quo* until the mandamus could be made operative'' (122 Tenn., 246, 122 S. W., 85).

The complainant seems to have acted as his own counsel, and it is probable that the present case was treated by the chancellor as an informal application for mandamus. *Hawkins* v. *Kercheval* (1882), 10 Lea, 535, 538, 539.

However this may be, there was no objection to any of the relief prayed by the complainant, either as to injunction or mandamus. The only ground of demurrer going to the remedy was the third ground, which claims that:

"This court has no jurisdiction hereof, the complainant having a plain, adequate, and complete remedy at law by *certiorari* to the (circuit) court."

This contention is manifestly unsound. *Certiorari* is not the exclusive remedy, where a board or inferior tribunal is basing its action on an unconstitutional statute, or where, acting under a constitutional statute, its proceedings are void. Where the proceedings are void, not merely irregular, injunction (*Smoky Mt. Co.* v. *Lattimore,* 119 Tenn., 620, 626, 629, 635, 105 S. W., 1028), or mandamus (*Hawkins* v. *Kercheval,* 10 Lea, 535, 539) will lie, as one or the other may be appropriate to the relief sought.

2. We think the right to practice medicine is, undoubtedly, a property right, of which the complainant cannot be illegally deprived. *People* v. *Love* (June, 1921), 298 Ill., 304, 131 N. E., 809, 16 A. L. R., 703; *Butchers' Union Co.* v. *Crescent City Co.* (1883), 111 U. S., 746, 762, 4 Sup. Ct., 652, 28 L. Ed., 585; *Matthews* v. *Murphy* (Ky., 1901), 63 S. W., 785, 54 L. R. A., 415; 6 R. C. L., 266. And see *Mott* v. *Ga. State Board, etc.* (1918), 148 Ga., 55, 95 S. E., 867; *State Board* v. *Lewis* (1920), 149 Ga., 716, 102 S. E., 24.

State Bd. of Medical Examiners v. Friedman.

In *People* v. *Love,* supra, after stating that the exercise of the police power is necessary and permissible with regard to the professions of medicine and of law, it is said:

"The right to follow either one of these professions is one of the fundamental rights of citizenship. A person's business, profession or occupation is at the same time 'property' within the meaning of the constitutional provision as to due process of law, and is also included in the right to liberty and the pursuit of happiness."

In *Butchers' Union Co.* v. *Crescent City Co.,* supra, it was said in the concurring opinion of Justices BRADLEY, HARLAN, and WOODS (111 U. S., p. 762, 4 Sup. Ct., 657):

"The right to follow any of the common occupations of life is an inalienable right; it was formulated as such under the phrase 'pursuit of happiness' in the Declaration of Independence, which commenced with the fundamental proposition that 'all men are created equal, that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness.' This right is a large ingredient in the civil liberty of the citizen."

In *Mott* v. *Georga State Board,* supra, the court says at page 60 of 148 Ga., at page 870 of 95 S. E.: "To deprive one of the right to practice his profession is to subject him to humiliation, mortification, and injury, which the Constitution will not permit, except in conformity with the law of the land and on evidence sufficient to authorize such a finding by an impartial tribunal."

In *Matthews* v. *Murphy,* supra, the court says, at page 416 of 54 L. R. A. (63 S. W., 785): "The appellee possessed the requisite qualifications, which entitled him to

a license to practice his profession, and the State board of health accordingly gave it to him. It is sought now to deprive him of that license because of the alleged unprofessional conduct. The license which he received is certainly a 'right' or 'estate.' "

We do not understand that the case of *Meffert* v. *Packer* (1903), 66 Kan., 710, 72 Pac., 247, 1 L. R. A. (N. S.), 811 (affirmed without discussion, 195 U. S., 625, 25 Sup. Ct., 790, 49 L. Ed., 350) is in conflict with this conclusion. All that was held in that case was that a State board might be given authority to revoke a license to practice medicine.

There is no contention by the appellee that a license to practice medicine once issued constitutes a binding and valid contract with the State, and confers upon the holder of the license a vested right. Such a contention is, of course, unsound, as pointed out in the brief of appellants. *Reetz* v. *Michigan* (1902), 188 U. S., 505, 510, 23 Sup. Ct., 390, 47 L. Ed., 563; *Hawker* v. *N. Y.* (1897), 170 U. S., 189, 18 Sup. Ct., 573, 42 L. Ed., 1002; *State* v. *Hovorka* (1907), 100 Minn., 249, 110 N. W., 870, 8 L. R. A. (N. S.), 1272, 10 Ann. Cas., 398, and case note.

But these cases do not hold that the right to practice medicine, or any other profession, is not a property right.

3. Can the complainant, after a trial on the merits before the State board, and an attempt to review its findings by *certiorari,* attack the constitutionality of the statute in question, because no provision is made therein for a hearing?

To sustain the chancellor's action the appellee cites the cases of *State Board of Medical Examiners* v. *Lewis*

(1920), 149 Ga., 716, 102 S. E., 24, and *Mott* v. *Ga. State Board of Examiners, etc.* (1918,), 148 Ga., 55, 95 S. E., 867.

In the case of *Mott* v. *Georgia State Board,* supra, the act in question provided that: ''The State board of examiners in optometry shall refuse to issue the certificate of registration, provided for in this act, to any person who shall have been guilty of grossly unprofessional and dishonest conduct.''

The act further provided for an appeal to the superior court after the judgment of condemnation.

The plaintiff Mott, having appeared before the board, and complied with its requirements as to examination, etc., was refused a certificate under the section hereinabove quoted, and the board declined to give him any hearing or trial.

He thereupon filed his petition for mandamus, and it was held, reversing the trial court, that the act in question deprived the petitioner of the due process of law guaranteed him under the Constitutions of Georgia and of the United States.

The case of *State Board of Medical Examiners* v. *Lewis,* 149 Ga., 716, 102 S. E., 24, is far stronger.

Lewis, a practicing physician, was cited to appear before the State board of medical examiners and answer certain charges. He appeared with his counsel, and, after the introduction of evidence on both sides, was found guilty. The statute in question made no provision for a hearing, or for notice to the accused, as a matter of right. It, however, provided that the accused might appeal from its finding to the superior court.

Lewis, accordingly, appealed from the finding of the board to the superior court, and from that court to the court of appeals of the State, where the board's decision was affirmed. 23 Ga. App., 647, 99 S. E., 147.

Thereafter he filed his bill in equity, alleging that the act under which he was tried and convicted was unconstitutional, and praying that the execution of the judgment be restrained.

It was held that the section of the act relating to trial and revocation of licenses, etc., was unconstitutional and void, because it failed to provide for due notice and hearing of the accused, and was therefore obnoxious to the due process of law clause contained in the State and in the federal Constitutions.

The court said (149 Ga., 720, 102 S. E., p. 26):

"The statute under which the defendant was tried by the State board of medical examiners being invalid and void on the constitutional grounds pointed out, the proceedings before that board, which resulted in finding the defendant guilty of certain specified offenses, were nugatory, and the finding was without effect and void; and the appeal and trial before a jury under the provisions of the section in the statute set forth above could not have the effect of giving validity to the proceedings and findings before the board, nor could the finding of the jury in the superior court upon the appeal be treated otherwise than as void, as the statute under which the trial was had was itself invalid. Nor could the fact that the case was carried to the court of appeals of this State, where the judgment of the court below was affirmed, give validity to the proceedings, or bar the defendant from asserting,

as he is seeking to assert here, that all proceedings had against him were nugatory.''

In support of its holding the court cited: *Moore* v. *Wheeler,* 109 Ga., 62, 35 S. E., 116; *Embry* v. *State,* 109 Ga., 61, 35 S. E., 116; *Griffin* v. *Eaves,* 114 Ga., 65, 39 S. E., 913.

These were criminal cases where the accused had been tried and convicted under an unconstitutional statute.

Answering the contention that this principle applies only to criminal cases, and cannot be invoked in a civil case, the court says, at page 722 of 149 Ga., at page 27 of 102 S. E.:

''We cannot assent to this proposition in its entirety. The result, it is true, did not subject the defendant to imprisonment in the chain gang or the penitentiary, and resulted merely in the revocation of his physician's license and the striking of his name from the record kept in the office of the clerk of the superior court. But this itself was a penalty, and the proceedings are in the nature of criminal proceedings. The proceedings were certainly *quasi*-criminal in character.''

In the case of *Bragg* v. *Yeargin* (1921), 145 Tenn., 643, 238 S. W., 78, a statute (Acts of 1915, chapter 149) authorized county boards of education and county high school boards to condemn land for public school purposes. It was provided that a board of appraisers should determine the value of the land sought to be condemned for school purposes, and that, in case the owner and the board of education failed to concur in the findings of the board of appraisers, appeal might be had to a court of competent jurisdiction for final adjudication, etc.

The board of appraisers having made a finding, the owners refused to give possession of the land condemned, whereupon the school board filed a bill, seeking a mandatory injunction, etc. The owners demurred on the ground that the act was unconstitutional, because it violated the constitutional provisions against taking property without just compensation, etc.

It was claimed that the defendants were estopped from contesting the constitutionality of the act, because they failed to appeal from the action of the board of appraisers. To his contention the court replied (145 Tenn., p. 649, 238 S. W., 80.):

"We do not think so. The action of the board of appraisers being a nullity because of the invalidity of the act under which they proceeded, defendants had the right to disregard it and refuse to surrender the possession of the property sought to be taken, and to challenge complainants' right to said property in this suit, the purpose of which is to have the title of said property divested out of defendants and vested in complainants, and the possession of same decreed."

In that case, however, as will be noted, the defendants treated the act and the proceeding of the board of education based thereon, as void, and did not appear before the board of appraisers, or have any hearing pursuant to the provisions of the statute. They merely invoked the unconstitutionality of the act, as a defense to the suit brought by the board for possession.

The case of *Fertilizer Co.* v. *McFall* (1913), 128 Tenn., 645, 163 S. W., 806, dealt with a proceeding under the Acts of 1907, chapter 602, section 30, for the back assessment of property.

Answering the contention that the county trustee (before whom the back assessment proceedings were had) was an interested party, and therefore the taxpayers in being forced to trial before him were deprived of due process of law, the court, after denying the correctness of this contention on other grounds, said (128 Tenn., at page 652, 163 S. W., 808):

"As a further answer to these assignments of error, it is proper to observe that under the decision of this court, and of the supreme court of the United States, it was not necessary for the statute to provide any opportunity at all for the hearing of the taxpayer by the trustee. The proceedings of the trustee might have been *ex parte* without notice to the taxpayer and without his presence or participation, and inasmuch as the taxpayer is given, by the terms of the act an opportunity to appeal from the trustee's action to the board of equalization, and has the further opportunity to obtain a review of the proceedings before the board of equalization in the courts, by *certiorari,* there is no room for him to complain. All he can demand is that at some stage of the proceedings he be given an opportunity to be heard and present his rights before an impartial tribunal. Inasmuch as he has no constitutional right to any hearing at all in the initial proceedings before the trustee, it follows that he cannot be heard to say the trustee was incompetent, under the Constitution."

It was further said (128 Tenn., at page 655, 163 S. W., 809): "When the law provides for a mode of confirming or contesting assessment of taxes by a board of revision whose action can be reviewed on *certiorari* with due notice to the person assessed, the assessment does not de-

prive the owner of his property without due process of law. *Palmer* v. *McMahon,* 133 U. S., 660, 10 Sup. Ct., 324, 33 L. Ed., 772.''

Undoubtedly the complainant had the right to review the action of the State board of medical examiners by *certiorari.*

See *Staples* v. *Brown* (1904), 113 Tenn., 639, 85 S. W., 254, construing the Tennessee statutes in this behalf. It is there said at page 644, of 113 Tenn., 85 S. W., 255:

''Circuit courts have original jurisdiction of all cases where jurisdiction is not conferred upon some other court, and a general appellate and revisory jurisdiction over all inferior tribunals, councils, and boards which may from time to time be created by the legislature and vested with judicial functions to review their proceedings in all cases where they have exceeded their jurisdiction, or acted illegally or erroneously. Where no appeal or writ of error will lie, this jurisdiction may be exercised by writs of *certiorari* and *supersedeas* and the case retried upon the merits. In this respect they are analogous to the courts of the king's bench of England. *Kendrick* v. *State,* Cooke, 474; *Duggan* v. *McKinley,* 7 Yerg., 21.

''They are by the express mandate of the Constitution (article 6, sections 1 and 10) required to be established in every county of the State, and are authorized to issue writs of *certiorari* to remove all civil cases, for sufficient cause, into them from any inferior jurisdiction.''

It is conceded in the bill that the appellee did avail himself of this remedy. He explains that the proceeding thus instituted in the circuit court was not prosecuted by reason of his imprisonment. But this is hardly a sufficient excuse.

Another ruling made in the case of *Fertilizer Co.* v. *McFall,* supra, is even more directly in point.

It is said (128 Tenn. at page 655, 163 S. W., 809):

"Under the eighth assignment of error the act is sought to be held in violation of the Fourteenth Amendment to the federal Constitution because the notice provided by the statute is insufficient. We do not think this contention is well taken. The notice advises the taxpayer that back assessment proceedings are to be begun against him, and, if he is able to show that he has paid taxes on all his property at a fair valuation, he cannot be hurt. He knows what property he has, and he knows its value, and should come prepared to prove these things, and that he has paid his taxes. Furthermore, inasmuch as this taxpayer actually participated in this back assessment proceeding, he cannot be heard to complain nor attack the statute because of any want of notice. *William* v. *Eggleston,* 170 U. S., 304, 18 Sup. Ct., 617, 42 L. Ed., 1047; *C., B. & Q. R. Co.* v. *Nebraska,* 170 U. S., 57, 18 Sup. Ct., 513, 42 L. Ed., 948; *Security Trust & Safety Vault Co.* v. *Lexington,* 203 U. S., 323, 27 Sup. Ct., 87, 51 L. Ed., 204."

The case of *Security Trust Co.* v. *Lexington* (1906), 203 U. S., 323, 27 Sup. Ct., 87, 51 L. Ed., 204, above cited, is relied on by appellee as sustaining the chancellor's holding that the act was unconstitutional.

In that case the United States supreme court said, at page 333 of 203 U. S., 27 Sup. Ct., 89: "If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute, the taxpayer may

have received in a particular case that is material, but the question is whether any notice is provided for by the statute. *Stuart* v. *Palmer,* 74 N. Y., 183.''

So in the present case it is contended the fact that the appellee may have appeared before the board, and may have had a hearing there, is immaterial, because this hearing was not provided for by the statute as a matter of right.

It is to be noted, however, that, although the supreme court held that the statute in question (providing for the back assessment of property) did not contain such a provision for notice and a hearing as a matter of right, and therefore was obnoxious to the federal Constitution, yet, inasmuch as the taxpayer had filed an injunction bill in the State court, and the State court had allowed such a proceeding as a matter of right, and had reviewed the assessment and reduced it more than $5,000—under these circumstances it was held that the taxpayer could not avail himself of the constitutional objection.

The court, speaking through Mr. Justice PECKHAM, said, at page 333 of 203 U. S., 27 Sup. Ct., 90:

''But in this case the State court has afforded to the taxpayer full opportunity to be heard on the question of the validity and amount of the tax, and after such opportunity has rendered a judgment which provides for the enforcement of the tax as it has been reduced by the court, the reduction amounting to over five thousand dollars. The plaintiff has, therefore, been heard, and on the hearing has succeeded in reducing the assessment. What more ought to be given? Whether the opportunity to be heard which has been afforded to the plaintiff has been pursuant to the provisions of some statute, as in *McMillen*

v. *Anderson,* 95 U. S., 37, and *Hagar* v. *Reclamation District,* 111 U. S., 701, or by the holding of the court that the plaintiff has such right in the trial of a suit to enjoin the collection of the tax, is not material. The State court in this case has held the taxpayer entitled to a hearing and has granted and enforced such right, and upon the trial has reduced the tax.''

Again it was said, at page 335 (27 Sup. Ct., 90): ''Even if the assessment had been made by the assessor without notice, yet if upon the hearing in this cause the plaintiff had the right and an opportunity to be heard, and the assessment was thereon reduced, it has obtained all the hearing it was entitled to. We think the plaintiff did have such a hearing, and the judgment is correct, so far at least as this court is authorized to review it.''

In view of these authorities we find ourselves unable to adopt the view of the supreme court of Georgia in *State Board of Medical Examiners* v. *Lewis,* 149 Ga., 716, 102 S. E., 24.

We are therefore of the opinion that the complainant is not in a position to attack the constitutionality of the act, on the ground that it did not provide for notice and a hearing.

4. Assuming that complainant is precluded from questioning the constitutionality of the act, on the grounds mentioned, we next proceed to consider the question whether the board acted illegally in revoking the license of the complainant solely on the ground that his conviction and, sentence to the Atlanta Penitentiary for violation of the federal statute, known as the Harrison Anti-Narcotic Act, evidenced ''moral turpitude'' within

the meaning of subsection "sixth" of section 16 of the act in question.

It is insisted for the board that conviction of any felony is a sufficient evidence of "moral turpitude."

This broad statement may, perhaps, be doubted, in view of the trend of modern legislation.

In the recent case of *Ex parte Marshall* (1922), 207 Ala., 566, 93 South., 471, 25 A. L. R., 338, the supreme court of Alabama held that it was reversible error to ask the defendant whether he had not been previously convicted of making liquor, on the ground that the distillation of spirituous liquors was not an offense involving "moral turpitude," and therefore did not affect the credibility of the witness.

It was said that "moral turpitude" means "something immoral in itself, regardless of the fact that it is punished by law. It must not merely be *malum prohibitum,* but the act itself must be inherently immoral."

The decision of this point was reversed by this court in *Tucker* v. *State* (January 19, 1924), 257 S. W., 850, 857.

By Acts of 1923, chapter 2 (held constitutional in *Pope* v. *State* [February, 1924], 258 S. W., 775), it was made a felony to transport intoxicating liquors in quantities of more than one gallon from one place to another within the State, punishable by imprisonment in the penitentiary from one to five years. Perhaps ten years ago no legislator or lawyer would have thought it possible that transportation of a gallon of liquor could be considered a felony. The moral quality of the act (apart from statute) remains the same.

By chapter 17 of the Acts of 1921 it is made a felony, punishable as larceny, for a person to take the automobile

of another, without his consent, "whether such person taking such vehicle intends to deprive the owner thereof and appropriate the same to his own use permanently, or merely intends to use the same without such owner's consent temporarily. . ." Section 1.

Under this statute a boyish prank may end in imprisonment in the penitentiary.

By chapter 77 of the Acts of 1897 it is made a felony, punishable by imprisonment from one to five years, for any person, "either in his own behalf or in a representative capacity," to take or receive a note or other written security for the sale of a patent right, unless it clearly appears on the face of such instrument that it was given in purchase of such right, etc.

This brief reference to a few of our own statutory offenses makes it clear that the mere violation of a revenue act (for on that ground alone was the constitutionality of the Harrison Anti-Narcotic Act sustained [*U. S. v. Doremus*, 249 U. S., 86, 39 Sup. Ct., 214, 63 L. Ed., 493]), may not in and of itself constitute "moral turpitude."

Again, by chapter 105 of the Acts of 1919 it is made permissible for any physician in this State to prescribe as much as eight grains of morphine per day to any one patient. It cannot, therefore, be said that prescribing morphine in considerable quantities is an act involving "moral turpitude," or even an illegal act, in this State.

Yet, in *Webb* v. *U. S.* (1918), 249 U. S., 96, 99, 100, 39 Sup. Ct., 217, 63 L. Ed., 497, it was held that, if a practicing and registered physician issues an order for morphine to a habitual user thereof—the order not being issued by him in the course of professional treatment in

the attempt to cure of the habit, but being issued for the purpose of providing the user with morphine sufficient to keep him comfortable by maintaining his customary use—such prescription constitutes a violation of the Harrison Anti-Narcotic Act, and would render the physician liable to be convicted of a ''felony''

It is true that four justices dissented from this opinion. Yet it is now the law.

We are therefore of opinion that the State board would not have the right to revoke a physician's license, on the ground that he had been convicted of an offense involving ''moral turpitude,'' solely because he had been convicted of a violation of the Harrison Anti-Narcotic Act, and this, in spite of the fact that any violation of the act, as has been pointed out (*U. S.* v. *Woods* [D. C.], 224 Fed., 278), constitutes a felony.

5.  We think it conceivable that there might be a conviction under the Harrison Act which would show that the convicted physician had been guilty of acts involving ''moral turpitude'' when he violated the federal statute in question.

Thus, suppose it should be shown that the convicted physician was in fact a mere drug peddler, praying on the necessities of that unfortunate class known as ''drug addicts.'' The record of the conviction, in such a case, might indicate a high degree of ''moral turpitude.''

On behalf of the State board it is claimed that the present case is one of this nature. It is insisted that the record of Dr. Friedman's case before the State board constitutes an exhibit to the bill in this case, and may be looked to in disposing of the demurrer.

This record, if it may be looked to, contains the following recital:

"And it further appearing to the board from the proof that the said Dr. Benj. Friedman has been guilty of continuously, constantly, and openly prescribing and dispensing morphine in utter violation of the law and good morals, and without any view whatsoever of treating addicts of morphine or users of morphine, but that he prescribes and sells his prescriptions solely and purely for the purpose of revenue in direct contravention of law and of his professional obligations."

There is some question whether this paper constitutes an exhibit to the bill, and whether it was before the chancellor in passing on the demurrer. The original bill was filed August 15, 1922. The amended bill was filed August 21, 1922. The demurrer of defendants was filed September 11, 1922, and the seventh ground thereof was that:

"The complainant has failed to attach to the bill a copy of the proceedings, which he attacks as being null and void and of no binding effect."

This, it may be observed, was not a valid ground for demurrer. The remedy of defendants was by motion—if indeed they had any remedy, in view of the failure of the bill to make the proceedings an exhibit. Gibson Suits in Chancery (2d Ed.), section 235.

The certified copy of the proceedings of the State board was filed in this case September 18, 1922, as appears from the indorsement of the clerk and master. The order, disposing of the demurrer, was entered December 6, 1922. It may be doubted whether this record, not made an exhibit either to the original or to the amended bill, was

a part of the bill to be considered in disposing of the demurrer. See *Ramsey* v. *Temple* (1879), 3 Lea, 252, 255, 256.

It is said in the brief of the counsel for the State board: "Complainant has asked that a copy of the proceedings revoking his license to practice medicine in Tennessee be made a part of this record, and same has been filed."

This seems to indicate that there may have been some agreement about the matter, but no such agreement appears of record.

6. We do not think cases of this nature should be decided on demurrer.

In the case of *Smith* v. *State* (1829), 1 Yerg., 228, a disbarment petition was brought against Smith, a practicing attorney, charging that he had, while an attorney of the court, accepted in the State of Tennessee a challenge to fight a duel; that he did fight this duel in the State of Kentucky and killed his adversary; and that he stood indicted in the State of Kentucky for murder.

Smith was cited to appear, and filed a motion to quash the proceedings.

This demurrer was overruled, and he was struck from the roll of attorneys, and appealed to this court.

After holding that the charge, if true, was a disbarable offense, the court said, at page 237:

"The cause will be remanded to the Maury circuit court for the proofs to be heard by that court; what they will be we know not, having only examined the motion to quash; the competency of the proofs we give no opinion upon, nor their effect, further than the petition sets them forth; to-wit, a true bill for murder, found in Simpson county, Ky.; which, if proved by the record to be the

fact, we think amply sufficient to authorize the circuit court to strike the defendant from the roll of attorneys, had no statute to suppress duelling ever passed in Tennessee, because the defendant stands charged with capital felony, and has prima-facie forfeited his life.''

As already stated, the defendants stood on their demurrer. We think, however, that this may have been done in the belief that the record of the proceeding before the State board constituted part of the bill, and might be looked to on the demurrer.

We believe that justice will be promoted by remanding this case for answer and proof on the question of ''moral turpitude'' which we have discussed.

The chancellor's decree will be modified, and the case remanded for answer and further proceedings, in accordance with the principles stated herein.