**Dr. Hugh S. GEIGER, Jr.**

v.

**Dr. B. H. JENKINS, President of State
Board of Medical Examiners of
Georgia, et al.**

**Civ. A. No. 13569.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 16, 1970.

G. Seals Aiken, Stanford & Stanford, Atlanta, Ga., for plaintiff.

John W. Hinchey, Atlanta, Ga., Archer, Patrick, Sidener & Thomason, East Point, Ga., for East Pt. Police Dept.

Lewis R. Slaton, Dist. Atty., Atlanta, Ga., for Don E'Dalgo.

Lewis, Lewis, Spearman & Bynum, Atlanta Ga., for Jack W. Mott, and Mrs. Janet Mott.

Before, BELL, Circuit Judge, and HOOPER and EDENFIELD, District Judges.

EDENFIELD, District Judge.

This action for damages and for declaratory and injunctive relief is brought under 28 U.S.C. § 1343 for claims allegedly arising under 42 U.S.C. §§ 1983, 1985, and 1988. An injunction against the enforcement of the state statute which regulates revocation of licenses to practice medicine (Ga.Code Ann. § 84–916) is sought on the ground that the statute is unconstitutional on its face, and a three-judge court has been convened pursuant to 28 U.S.C. § 2281.

Plaintiff is a medical doctor who has been licensed to practice medicine in the State of Georgia since shortly after his graduation from Emory University Medical School in June 1950, and who has practiced in this State continuously since June 1, 1956. Defendants are members of the State Board of Medical Examiners of Georgia, certain named employees of that board, certain named members of the East Point Police Department, an investigator for the District Attorney of Fulton County, and certain private individuals who allegedly acted in concert with the named state officials.

The record shows that on February 18, 1970, the Board of Medical Examiners issued to plaintiff a notice that the Board had been presented with charges that plaintiff had engaged in conduct which might constitute grounds for suspension or revocation of his license to practice medicine. The charges were based on affidavits which were attached to the notice. In general, plaintiff was charged with having solicited, committed, or otherwise participated in acts of sodomy, unlawful sales of dangerous drugs, use of stolen credit cards, theft by receiving stolen property, and various other unlawful acts. The notice stated that a hearing on these charges would be held on March 11, 1970, and plaintiff was informed of his right to controvert the charges, to raise any defenses he

wished, to be represented by counsel at the hearing, to respond and present evidence on any relevant issue, and to subpoena witnesses and documentary evidence through the State Board of Medical Examiners. On March 10, 1970, plaintiff filed the instant suit and on May 11th a hearing was held before the three-judge court, after which the parties were allowed additional time within which to file briefs.

The complaint is lengthy, redundant, confused, and conclusory, making no effort to comply with the provision in Rule 8 of the Federal Rules of Civil Procedure that there must be a short and plain statement of the claim showing that plaintiff is entitled to relief, but in essence it appears to allege that the defendants have conspired (1) to deny plaintiff equal protection under the laws, and (2) arbitrarily, capriciously, and maliciously to deprive him of his license to practice medicine without according him due process and equal protection of the laws in that they have served him with notice of a license revocation hearing and in that they have obtained in an unlawful manner evidence to be used against him.

The gist of his attack upon the statute appears to be that it is vague and overly broad on its face and that it gives to the Board of Medical Examiners unfettered discretion to suspend or revoke licenses to practice medicine. For the reasons set forth below we do not reach the merits of plaintiff's contentions with respect to the statute and the complaint will be dismissed on other grounds.

■■ First, since state proceedings were pending in the state courts and before the Medical Board at the time plaintiff came into federal court, and since it is those proceedings with which plaintiff asks this court to interfere, the anti-injunction statute, 28 U.S.C. § 2283,[1] precludes the granting of either declaratory or injunctive relief. See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), Brooks v. Briley, 274 F.Supp. 538 (N.D. Tenn.1967), aff'd. per curiam, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968).[2] Federal courts must look to the law of the State to determine whether proceedings which were pending when suit was brought were judicial in nature. Hill v. Martin, 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. 293 (1935). Under Georgia law the statute which regulates revocation of licenses to practice medicine is a penal statute and the revocation proceedings themselves are in the nature of criminal proceedings. See Hughes v. State Board of Medical Examiners, 158 Ga. 602, 123 S.E. 879 (1924); State Board of Medical Examiners v. Lewis, 149 Ga. 716, 717, 102 S.E. 24 (1920). It follows, therefore, that since license revocation proceedings already had begun when the instant suit was filed, federal court in-

---

1. Under 28 U.S.C. § 2283, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

2. In the Supreme Court's per curiam affirmance of *Brooks*, the Court cited as its authority only Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), in which injunctive relief was denied but declaratory relief was granted. However, since in *Brooks* both declaratory and injunctive relief were denied, it is evident that the Supreme Court in *Brooks* affirmed the three-judge court's holding that § 1983 does not create an ex-press exception to the anti-injunction statute, and the further holding that the anti-injunction statute prohibits both declaratory and injunctive relief, for otherwise the three *Brooks* plaintiffs against whom prosecutions were pending, like those in *Cameron*, would have been entitled to declaratory relief.

This view does not of course run counter to Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), in which the Court held that declaratory relief may be proper even when injunctive relief is not, for in *Zwickler* there were no prosecutions pending and the anti-injunction statute therefore was not involved, i. e., *Zwickler* was an abstention case, not an anti-injunction case.

terference with those proceedings is prohibited by the anti-injunction statute, just as interference with the state criminal proceedings is prohibited.[3]

■ Furthermore, if the anti-injunction statute were inapplicable because proceedings were not pending at the time this action was brought, we would then be faced with the doctrine that federal courts ordinarily must not decide federal constitutional questions which are enmeshed with unsettled questions of state law and which conceivably could be avoided by a state court adjudication of the questions arising under state law. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); City of Meridian v. Southern Bell Telephone & Telegraph Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959). This, of course, is a matter of abstention—not of legislative mandate—but it is nevertheless a well-recognized principle which we are not free to ignore. Its continuing validity was recognized by the Supreme Court earlier this term, in Reetz v. Bozanich, supra, when the Court vacated the judgment of a three-judge district court which had assumed jurisdiction in circumstances analogous to those existing in the instant case.

In *Reetz* certain commercial fishing laws of the State of Alaska were challenged as depriving plaintiffs of rights secured to them by the Equal Protection Clause of the Fourteenth Amendment and by the Alaska Constitution. The Supreme Court noted that regulation of Alaska's unique fishing resources was a matter of great state concern and held that the case was a classic one for application of the Pullman doctrine since

"the nub of the whole controversy may be the state Constitution."

■■ Here, as in *Reetz* the plaintiff has challenged a state statute regulating activities in which the State has a vital interest. The right to practice medicine is a conditional right which is subordinate to the state's power and duty to safeguard the public health, and it is the universal rule that in the performance of such duty and in the exercise of such power, the state may regulate and control the practice of medicine and those who engage therein, subject only to the limitation that the measures adopted must be reasonable, necessary, and appropriate to accomplish the legislature's valid objective of protecting the health and welfare of its inhabitants. *See* McNaughton v. Johnson, 242 U.S. 344, 37 S.Ct. 178, 61 L.Ed. 352 (1917); Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889); 41 Am. Jur., Physicians and Surgeons, §§ 3–8. It is beyond dispute that the power of the State to regulate the practice of medicine includes the power to create an administrative board and vest in it the supervision of such regulation. Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L. Ed. 1086 (1935). If, as plaintiff in the instant case apparently contends, the Georgia legislature has delegated to the Medical Board legislative powers which are nondelegable under the Georgia Constitution it will not be necessary to reach the federal question of whether the statute is unconstitutionally vague and overbroad, and the federal court therefore should avoid needless friction between federal pronouncements and

---

3. Assuming that the First Amendment exception to the anti-injunction statute, as set forth in Machesky v. Bizzell, 414 F. 2d 283 (5th Cir. 1969), and Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969), is still valid despite the Supreme Court's apparently uncompromising language in Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), that exception is inapplicable in the instant case because the challenged statute is not one regulating expression and there is no substantial allegation that it is being applied for the purpose of discouraging the exercise of First Amendment rights. Nor is there the possibility of collateral suppressive effects which the Fifth Circuit considered so important in Sheridan v. Garrison, *supra*, where the Court appeared to indicate that injunctive relief would not be given unless there was more at stake than a single plaintiff's liberty.

state policies by requiring the parties to repair to the state courts for a resolution of their state constitutional questions.

Apart from the statute, plaintiff's civil rights complaint consists primarily of allegations (1) that the defendants conspired to deprive him of due process and equal protection of the laws by charging him with conduct which if true would subject him to loss of his license to practice medicine, (2) that defendants deprived him of due process and equal protection by participating in an unlawful search of his office and seizure of evidence to be used against him, and (3) that the Board deprived him of due process and equal protection by using affidavits from known perjurers and narcotic addicts as a basis for the license revocation proceedings which have been instituted.

■ Assuming arguendo that the evidence obtained by searching his office was illegally obtained, as plaintiff contends, this is neither the time nor the place to raise such an issue. Any doubt on that score was laid to rest long ago. See Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969). In Stefanelli, the Supreme Court refused to interfere with the use of evidence which had been unlawfully obtained, and held that "the federal courts should refuse to intervene in State Criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure."[4] The Court went on to explain that more was involved than mere doctrinaire alertness to protect the proper sphere of the states in enforcing their criminal laws:

"If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of proce-dural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impannelling and selecting of the grand and petit juries, in the failure to appoint counsel, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution." Id. 342 U.S. at 123–124, 72 S.Ct. at 121–122.

■ Equally without merit are plaintiff's claims that he has been denied due process and equal protection of the laws because charges which might well result in the loss of his license to practice medicine have been placed against him and because affidavits by "known perjurers and narcotic addicts" formed the basis for these charges. To the contrary, the record shows that plaintiff has been afforded notice and an opportunity to be heard on the charges which have been made—a hearing which he seeks to prevent—and at this point it clearly cannot be said that he has been denied due process. Furthermore, the bare allegation that defendants have denied or have conspired to deny him equal protection of the laws is not supported by a single allegation which, if true, would tend to show invidious discrimination. In short, plaintiff has alleged nothing which would entitle him to relief under the Civil Rights Act.

Accordingly, the complaint is dismissed for failure to state a claim upon which relief can be granted.

4. Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951).