Ed J. POLK, on behalf of himself, and all others similarly situated, Plaintiffs-Appellants,

v.

The STATE BAR OF TEXAS et al., Defendants-Appellees.

No. 72-2488.

United States Court of Appeals, Fifth Circuit.

June 20, 1973.

As Amended on Denial of Rehearing Aug. 20, 1973.

Michael N. Buckley, Grand Prairie, Tex., Warren Burnett, Odessa, Tex., James A. Johnston, Edward B. Cloutman, III, Dallas, Tex., for plaintiffs-appellants.

L. W. Anderson, Dallas, Tex., for defendants-appellees.

Before TUTTLE, THORNBERRY and DYER, Circuit Judges.

TUTTLE, Circuit Judge:

On June 27, 1972, a Grievance Committee of the State Bar of Texas, following a plenary hearing, decided to issue an official reprimand of appellant Ed J. Polk for professional misconduct as a result of derogatory statements Polk allegedly made about a district attorney and

county judge in Dallas, Texas. Immediately thereafter Polk brought this § 1983 action in the district court seeking to enjoin publication of the reprimand. He alleged, among other things, that the

> "defendants exercised their authority in a manner having the clear purpose and effect of depriving plaintiff Polk of his constitutionally guaranteed right to freedom of speech . . .,"

and that this action had a "chilling effect on plaintiff's future exercise" of his First Amendment rights. The district court dismissed the suit on the basis of the non-intervention doctrine announced in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971).

Polk noticed an appeal and moved this court for an interim injunction which we denied on the grounds that under the administrative grievance machinery of the State Bar of Texas Polk could prevent publication of the reprimand simply by filing a civil suit to have it set aside in the state district court in the county of his residence.[1] However, we specifically reserved to Polk the right subsequently to try his constitutional claims in federal court. We said,

> "[S]ince these rights have been so specifically asserted this order recognizes that being compelled as a practical matter to pursue this administrative appeal to the state district court, appellant has not abandoned his demand for a federal court determination and, on the contrary, he has and may continue to reserve his right to insist hereafter on a federal court determination . . ."

Chief Judge Brown, writing for the court, concluded,

> "What—and all—we determine is that interim relief is not appropriate and whether subsequent relief is will depend on what the situation then is."

1. Article XII, Section 16(b) of the Rules Governing the State Bar of Texas provides:
    "If the accused shall deem the reprimand unwarranted, he may, within ten days after delivery or mailing thereof, file suit in the district court of the county of his residence to set same aside, failing which the reprimand shall become final . . ."

Under the compulsion of our denial of interim relief, Polk filed suit in state court, which action had the effect of staying publication of the reprimand.

The sole issue for decision here is whether it was error for the district court to dismiss Polk's § 1983 action on the basis of the Younger doctrine. We think it was.

Before consideration of the legal issues involved, we undertake to outline in some detail the procedures for disciplining attorneys in Texas and the nature of the proceeding to which Polk himself was subjected. It is noted that Texas has what is commonly called an integrated bar, that is, every practicing attorney in Texas is required by law to be a member of the State Bar. The State Bar itself is governed by the provisions of the State Bar Act [2] which designates the Bar as an administrative agency with the power to contract and to sue and be sued.[3] This enabling legislation provides that from time to time the Supreme Court of Texas may promulgate rules and regulations pertaining to, among other things, procedures for disciplining wayward members of the Bar, which, if approved by a majority of Texas attorneys, would become binding on each of them.[4] Pursuant to this statutory authority the Supreme Court promulgated, and the Bar approved, a set of rules [5] creating the so-called Grievance Committees, composed of members of the Bar and charged with primary responsibility for handling complaints of misconduct against attorneys. The rules outline the powers and duties of the committees, including procedures for filing of complaints with the committees, investigation of complaints, hearings before the committees, and actions which may be taken by the committees on a complaint.

The committees can take action in one of two ways. First, they may bring proceedings against an attorney by way of formal complaint in the district courts of the state,[6] or second, they may themselves handle the matter administratively, subject to statutory limitations on the sanctions which might be imposed. It is noted that Polk was disciplined in accordance with the latter procedure, that is, through the more or less informal administrative machinery of the Grievance Committees, and thus was never subject to court process.

Moreover, it should be pointed out that while the Grievance Committees are given limited disciplinary powers they are without authority themselves to disbar (or even to suspend) an attorney absent his acquiescence in the committee's jurisdiction to do so. The State Bar Act specifically provides that disbarment proceedings may be instituted only in the district courts of the state, thus preserving the accused attorney's rights to trial by jury.[7] Article XII, Section

2. Article 320a–1, 14 Vernon's Tex.Civ. Stat.Ann., Volume 1A.

3. Section 2 of the Act provides:
   "There is hereby created the State Bar, which is hereby constituted an administrative agency of the Judicial Department of the State, with power to contract with relation to its own affairs and which may sue and be sued and have such other powers as are reasonably necessary to carry out the purposes of this Act."

4. Sections 3 and 4, Article 320a–1, 14 Vernon's Tex.Civ.Stat.Ann., Volume 1A.

5. Rules Governing the State Bar of Texas.

6. See Rules Governing State Bar of Texas, Article XII, Sections 21–31; Arnett v. State, 304 S.W.2d 386 (Tex.Civ.App. 1957).

7. Section 5 of the Act provides:
   "The Supreme Court of Texas shall not adopt or promulgate any rule[s] or regulation[s] abrogating the right of trial by jury in disbarment proceedings . . ."
   Section 6 then provides:
   "No disbarment proceedings shall be instituted against any attorney except in the district court located in the county of such attorney's residence . . ."

16 of the Rules thus provides that at the conclusion of an investigation the Grievance Committees are empowered to take action only as follows: (1) Dismiss the complaint against an attorney; (2) Issue a reprimand (public or private); (3) Revoke an attorney's license or suspend it for a period not to exceed three years where the committee "shall have reason to believe the accused will accept its actions as final,"[8] or (4) Institute formal proceedings against the attorney in a state district court.

In light of this bifurcated system it must be plainly apparent that in Texas disbarment, which is required by statute to be the subject of court process, is treated as differing qualitatively from the lesser sanction of reprimand which may be imposed administratively by a Grievance Committee. We find it unnecessary, then, to reach the question whether a disbarment proceeding actually pending in a Texas state court would be governed by the Younger doctrine of non-intervention. As noted, such a proceeding (which is governed by an entirely different set of rules) was not here involved. Rather, the action of which Polk complains was the decision, already made, of an administrative tribunal, composed of members of the Bar, to reprimand Polk for professional misconduct. This administrative proceeding, of course, could not, absent Polk's consent, have been a disbarment proceeding inasmuch as the Grievance Committee was otherwise without power to disbar him, and, since the particular committee had already rendered its decision, the matter was not, at the time this suit was brought in federal court, still pending before it.

It is argued, nonetheless, that such a proceeding is "quasi-criminal" in nature and that as a consequence intervention by a federal court is precluded under the Younger doctrine. While we do not, under the law of this circuit, need to decide whether or not this administrative action to reprimand Polk might properly be characterized as a quasi-criminal proceeding, we think it appropriate to comment on the issues thus posed. Appellees point out that the Supreme Court has held that *disbarment* proceedings, at least for some purposes, may be classified as "quasi-criminal" in nature.[9] Although that decision was based on due process considerations, the "quasi-criminal" designation was nevertheless applied by the Court of Appeals for the Second Circuit in Erdmann v. Stevens, 458 F.2d 1205 (2nd Cir. 1972) to support its conclusion that *Younger* and its progeny barred federal court relief with respect to a pending disbarment proceeding in the state courts of New York. It does not follow from that, however, even were we to accept the reasoning of the *Erdmann* court, that the same conclusion is dictated where a minor disciplinary sanction is sought to be imposed by an administrative tribunal under an entirely separate procedure than that required for disbarment, which in Texas is cognizable only in state court, or, in short, that simply because a disbarment proceeding is characterized as quasi-criminal, any and every other disciplinary action against an attorney, no matter the gravity or method of imposition, should likewise be characterized as quasi-criminal. More important, however, is the very basic principle that whatever else might be said about the doctrine of comity, as comprehended by the *Younger* line of cases, it is fundamental that its applicability necessarily must be determined by reference to *state* law.[10] Here there was

---

8. This third proviso thus requires in effect that the accused attorney consent to the committee's jurisdiction for disbarment purposes, and to that end Section 20 of Article XII provides a boilerplate form for registering such consent.

9. In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

10. In Geiger v. Jenkins, 316 F.Supp. 370 (1970), aff'd., 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed. 525 (1970), which in-

no finding by the district court that *under Texas law* proceedings before a Grievance Committee are criminal in nature. Indeed, the Texas courts have consistently held that even disbarment proceedings, which are governed by rules of civil procedure, are *civil* rather than criminal. Houtchens v. Mercer, 119 Tex. ·244, 27 S.W.2d 795 (1930); Houtchens v. State, 63 S.W.2d 1011 (Tex.Com.App.1933); Burns v. State, 76 S.W.2d 172 (Tex.Civ.App.1934).

However, we need not further reflect upon the matter for in this circuit, at least, the appellation is not determinative of the ultimate issue whether the *Younger* rule applies. As this court said in Palaio v. McAuliffe, 466 F.2d 1230, 1232–1233 (5th Cir. 1972),

"We believe, however, that application of the principles of *Younger* should not depend upon such labels as 'civil' or 'criminal,' but rather should be governed by analysis of the competing interests that each case presents. Thus, in Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971), this court held that *Younger* did not bar a suit seeking relief from enforcement of a city ordinance prohibiting political activity by firemen; the court's conclusion rested not on the view that enforcement of the ordinance (dismissal of firemen who violated it) was 'civil' in nature, but rather on the ground that federal intervention in that case could have no effect on an ongoing state proceeding, either civil or criminal. [Citation omitted]. On the other hand, when federal anticipatory relief will significantly affect a state's enforcement—by whatever means—of its criminal laws, then such relief is barred by the strong policy of noninterference, unless the plaintiff can meet the heavy burden of proof that *Younger* imposes."

We concluded that "the principles of *Younger* bar federal intervention in a state civil proceeding that is an integral part of a state's enforcement of its criminal laws."

■ Under this test we think it abundantly clear that when a Grievance Committee, by administrative action, undertakes merely to upbraid a local attorney for conduct deemed to be violative of the ethical standards of the profession, as provided in the Canons of Ethics, it is not in any sense acting in aid of the enforcement of Texas' criminal laws.[11]

■ Such administrative action is properly viewed as a simple matter of policing the legal profession to insure that the high standards of professional integrity are maintained.· We see nothing in this sort of regulatory activity which might be construed as an integral part of Texas' enforcement of its criminal laws or "as part of a comprehensive scheme for the enforcement of the Texas Penal Code." Duke v. Texas, 5 Cir., 477 F.2d 244 decided April 20, 1973.[12]

volved a license revocation proceeding pending before the Georgia State Board of Medical Examiners, the three-judge federal court looked to the law of Georgia to determine whether such proceedings were criminal in nature. Having ascertained that under state law license revocation proceedings were indeed considered criminal proceedings the court refused to intervene in the pending action. This decision was summarily affirmed by the Supreme Court. Subsequently the Court, in the recent case of Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973), was confronted with the question whether the *Geiger* decision controlled a similar case involving the Alabama State Board of Optometrists, which, it was alleged, was unconstitutionally constituted. One of the bases for distinguishing the *Geiger* case was that "there is no judicial finding here as there was in *Geiger* that under applicable state law license revocation proceedings were quasi-criminal in nature." 93 S.Ct. at 1697.

11. We reiterate that we do not reach nor intimate any views as to what might be the proper disposition of this case in the event that the action complained of was the subject of a pending court action brought by a Grievance Committee.

12. An additional reason for denying the application of *Younger* here lies in the

■ The only remaining question is whether the federal court should stay its hand in this case for failure to exhaust available state remedies. With respect to this question we note that Polk, in the first instance, was subjected to administrative process by a Grievance Committee. On the assumption that we might require exhaustion of *administrative* remedies as a prerequisite to maintaining a § 1983 action in federal court, there is no question here, even if required of him, that Polk has exhausted his administrative remedies. In Stevenson v. Board of Education of Wheeler County, Georgia, 426 F.2d 1154, 1157 (5th Cir. 1970) we required

"such prior reference to local *institutional* authorities as may be necessary to assure that the action complained of is final *within the institution* in the sense that it is ripe for adjudication." (Emphasis supplied).

Here, the institution is the State Bar of Texas but there is no provision for review of the decision by the Grievance Committees within the institutional framework of the State Bar. Since further recourse thereto would have availed Polk nothing, the decision to reprimand

him was "final within the institution." Thus, within the language of *Stevenson* the action was "ripe for adjudication."

The rules, of course, provide:

"If the accused shall deem the reprimand unwarranted, he may, within ten days after delivery or mailing thereof, file suit in the district court of the county of his residence to set same aside, failing which the reprimand shall become final . . . ." Article XII, Section 16(b), Rules Governing the State Bar of Texas.

However, this proviso in no way affects the finality of the administrative decision. Properly construed this ten day proviso simply affords a remedy in state court and gives the accused individual ten days within which to take advantage of it. But the availability of such a remedy cannot be exclusive of any federal remedy Polk might have.[13] As this court said in Hobbs v. Thompson, 448 F.2d 456, 461 (5th Cir. 1971),

"Exhaustion of adequate state remedies as a prerequisite to a federal court considering a case on its merits is, in the words of Judge Wisdom, 'a jurisdictional or a pseudo-jurisdictional requirement.' Moreno v. Henckel,

---

nature of proceedings before a Grievance Committee. Under proper circumstances, of course, federal courts will pay the same deference to proceedings of state administrative bodies as they will to those in state courts, Gibson v. Berryhill, *supra*, but whether in any given case this should be done depends on an "analysis of the competing interests that each case presents," as *Palaio* requires. Under Texas law, which we are obliged to observe, it has been held that because a Grievance Committee has authority "not only to hear but to decide the matters coming before it," it is deemed, for certain purposes, as exercising quasi-judicial powers. McAfee v. Feller, 452 S.W.2d 56, 57–58 (Tex.Civ. App.1970). This characterization, however, is not dispositive of the *Younger* issue, for in any particular case a Grievance Committee may decide to assume a prosecutorial role, in the stead of the local district attorney, against the accused in state court. Arnett v. State, *supra*, n. 7. Thus, it would appear that the functions of Grievance Committees

are not considered as being *in pari materia* with court functions. As one Texas court put it:

"The Committee is an investigating body. The aim of its inquiry is to collect and assemble facts and information that will enable the Committee to take such future action as it may deem expedient for the public welfare. [Citation omitted]. The Grievance Committee is not designed or equipped by the rules and regulations of the State Bar Act to conduct a trial." Smith v. Grievance Committee, 475 S.W.2d 396, 399 (Tex.Civ.App.1972).

13. In Gibson v. Berryhill, *supra*, n. 11, the Court, in upholding the decision of the federal district court to consider the constitutional claims of the plaintiff, noted, "nor . . . would a different result be required simply because judicial review, *de novo* or otherwise, would be forthcoming at the conclusion of the administrative proceedings." 41 L.W. at 4580. The same principle is applicable here.

431 F.2d 1299 (5th Cir. 1970). Usually raised in the context of *administrative* remedies, some commentators have urged that a form of the doctrine be extended to state *judicial* remedies in cases arising under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983, the cause of action upon which the present case is based. [Citations omitted]. However, as we specifically held in Hall v. Garson, 430 F.2d 430 (5th Cir. 1970), and reaffirmed in Moreno v. Henckel, *supra,* based upon a reading of Monroe v. Pape, 365 U.S. 167 (1961), 81 S.Ct. 473, 5 L.Ed.2d 492, exhaustion of state *judicial* remedies is not a prerequisite to the invocation of federal relief under § 1983 since the cause of action established by that statute is fully supplementary to any remedy, adequate or inadequate, that might exist under state law."

Thus, having first brought this action in federal court, Polk is entitled to maintain it in this forum. We reaffirmed this principle of law in our recent case of Duke v. Texas, *supra,* where we said:

"It is a time-tested rubric of our federalism that:

'Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases.' Taylor v. Taintor, 1873, 16 Wall. (83 U.S.) 366, 370, 21 L.Ed. 287, 290.

This principle is an integral part of the principles of federalism enunciated in *Younger*."

 Appellees urge finally that the federal court should abstain in this case under the traditional principles of abstention. Without venturing deep into the abstention maze, we think it sufficient to say that Polk's constitutional claims would not be fully resolved by a determination in his favor of questions of state law. Abstention by the federal court, therefore, would be inappropriate.

Reversed and remanded to the district court for further proceedings not inconsistent with this opinion.