Jennifer A. KOTZ, M.D., Plaintiff,

v.

State of FLORIDA, and Florida Board of Medicine, Defendants.

No. 98–496–CIV–J–16(B).

United States District Court,
M.D. Florida,
Jacksonville Division.

Dec. 23, 1998.

Samuel A. Mutch, Gainesville, FL, Edmund D. Cooke, Jr., Joan B. Tucker Fife and Chevanniese Smith, Washington DC, Patricia H. Latham and Peter S. Latham, Washington DC, for Plaintiff.

Robert A. Butterworth, Attorney General, Leslie G. Street, Assistant Attorney General, Tallahassee, for Defendant.

## ORDER

JOHN H. MOORE, District Judge.

This case is before the Court on Defendant's *Motion to Quash and Dismiss.* (Doc. # 6). At the outset, the Court notes that the Motion to Quash has been withdrawn and subsequently denied as Moot by the Magistrate Judge in an Order dated October 14, 1998. (Doc. # 22).

## I. Facts

In this instance Jennifer A. Kotz, a 1992 graduate of Hollins College and a 1996 graduate of the University of Florida School of Medicine, complains that the State of Florida and the Florida Board of Medicine are discriminating against her in violation of the Americans with Disabilities Act.

Ms. Kotz was diagnosed with Attention Deficit Disorder and Dyslexia in 1994. According to Ms. Kotz's complaint she requested and received from the University of Florida Medical School "accommodations in academic testing situations that required her to engage in rapid visual processing of lengthy materials under stringent time limits." Specifically, the University of Florida granted additional test taking time on every test. Ms. Kotz asserts that the University granted time as it had made the determination that Ms. Kotz was an "individual with a disability entitled to reasonable accommodation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*" Ms. Kotz states that she has neither requested nor received accommodations from her current residency program at St. Vincent's Hospital.

In order to become certified as a medical doctor it is necessary for the prospective doctor to pass all three Steps of the United States Medical Licensing Exam ("USMLE"), which is a standardized test apparently similar in nature to the Multistate Bar Examination. The USMLE is produced by the Federation of State Medical Board Examiners and the National Board of Medical Examiners ("NBME"). Step One is usually administered at the end of the second year of medical school. Step Two is given during the fourth year and Step Three is given after the completion of one year of residency and, upon successful completion, signifies the prospective medical doctor's ability to practice without supervision.

Ms. Kotz asked for and received special provisions from the NBME when she took Step One. Ms. Kotz passed Step One. Step Two was completed successfully without accommodation. The State of Florida Board of Medicine ("FBM") only became involved with the testing process during Step Three when Ms. Kotz requested special accommodations for Step Three similar to those she requested and received during Step One and also at the University of Florida.

In requesting accommodations on Step Three, Ms. Kotz provided the same materials that she had provided to the NMBE and the University of Florida Medical School. That is, Ms. Kotz provided documentation from her neurologist. Other than the request for accommodations and her admitted Dyslexia/ADD, Ms. Kotz states that she is otherwise qualified to be a medical doctor. Ms. Kotz submitted her application to the Florida Board of Medicine on December 6, 1996 and received a letter from the Board on January 6, 1997. The January 6, 1997 letter requested that Ms. Kotz submit more information about her condition and that she undergo, at her own expense, an independent psychiatric

evaluation through the Florida Physicians Network to assess any mental illness, chemical use and physical impairment. Via letter dated March 6, 1997, the Credentials Committee of the Florida Board of Medicine requested that Ms. Kotz appear in front of them in order to discuss both her past history and her request for special accommodations.

On April 30, 1997, the FBM authorized Ms. Kotz, by letter dated April 22, 1997, to sit for the Step Three Exam with the requested accommodations. At that time the FBM stated that it was withholding a decision on her license application until such time as she provided additional information about her condition and any "accommodations" which she may need in order to practice. The FBM stated in its Order that:

4. In light of ... [ Kotz's] extremely successful academic history, and the lack of any information provided to the Board to contradict the indication of such success, and in light of the Applicant's refusal to provide any description of the manner in which the indicated diagnosis were made, and in light of the Applicant's refusal to provide any description of the manner of treatment being undertaken in regard to this diagnosis, the Board is unable to make the determination that the Applicant is indeed an otherwise qualified individual with a disability, and if so, what if any protections must be put in place to protect, the public and the Applicant, if she becomes licensed, from any dangers related to her alleged disabilities and the effect of such disabilities on her ability to practice safely within the entire scope of medical practice in Florida.

In a footnote to this section the FBM stated:

The Board has agreed to allow the Applicant to provide the necessary information through the Applicant's diagnosing and treating physician or as suggested by the Applicant's attorney, through the report of a nationally noted expert in the relevant areas who would examine the Applicant and provide relevant diagnoses, recommendations for treatment, if necessary, and an opinion with regard to the Applicant's ability to safely practice medicine in Florida.

Such expert would be approved by the director of the Florida Physician's Resource Network (PRN).

Furthermore, the FBM stated that Ms. Kotz had the right to request an administrative hearing to review the intended action of the FBM. The hearing would be conducted pursuant to Florida State Statute 120 .569 and 120.57 and Rule Chapters 59R and 28–106 of the Florida Administrative Code. Any request must have been made within 21 days of the service of the FBM's order otherwise the order would become "final".

Ms. Kotz successfully took and completed the Step Three Exam in May 1997, with the accommodations which the FBM provided. Ms. Kotz received a grade of "High Pass" on her Step Three Exam.

## II. Plaintiff's Complaint

Plaintiff Kotz complains in this case that the Florida Board of Medicine is violating the Americans with Disabilities Act in that it is discriminating against her based on her disability of Dyslexia and Attention Deficit Disorder. The Plaintiff specifically argues that the FBM is both discriminating against her and also segregating her. By segregation, the Plaintiff asserts that the FBM is trying to impose "accommodations" upon her that she does not desire. Finally, the Plaintiff asserts that the Defendants have violated Florida Statutes Section 120.60 which provides:

(2) When an application for a license is made as required by law, the agency shall conduct the proceedings required with reasonable dispatch and with due regard to the rights and privileges of all affected parties or aggrieved persons. Within 30 days after receipt of application for a license, the agency shall examine the application, notify the applicant of any apparent errors or omissions, and request any additional information the agency is permitted by law to require. Failure to correct an error or omission or to supply additional information shall not be grounds for denial of the license unless the agency timely notified the applicant within this 30–day period .... Every application for license shall be approved or denied within 90 days

after receipt of the original application or receipt of the timely requested additional information or correction of errors or omissions unless a shorter period of time for agency action is provided by law. The 90–day or shorter time period will be tolled by the initiation of a proceeding under s. 120.57 and will resume 10 days after the recommended order is submitted to the agency and the parties, whichever is latest, shall be deemed approved; and, subject to the satisfactory completion of an examination, if required as a prerequisite to licensure, the license shall be issued. The Public Service Commission, when issuing a license, and any other agency, if specifically exempted by law, shall be exempt from the time limitations within this subsection. Each agency, upon issuing or denying a license, shall state with particularity the grounds or basis for the issuance or denial of the license, except when issuance is a ministerial act. On denial of a license application on which there has been no hearing, the denying agency shall inform the applicant of any right to a hearing pursuant to s. 120.57.

Fl. Stat. Ann. § 120.60(3). In this instance the Plaintiff complains that within thirty days of the FMB's receipt of Ms. Kotz's application, it should have taken action. Instead, Ms. Kotz argues, that the time for action passed and that the FBM no longer has the right to do anything except issue a medical license to Ms. Kotz.

### III. Defendant's Response

The Florida Board of Medicine has responded to Ms. Kotz's complaint by attempting to draw the cloak of Eleventh Amendment immunity around it. The FBM argues through its counsel, the Florida Attorney General, that it is immune from suit in federal court under the Eleventh Amendment of the United State Constitution unless the Congress of the United States has overridden this immunity or the State Legislature has otherwise provided. Additionally, the FBM argues that the Court should stay its action and/or dismiss pursuant to the doctrines presented in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), *District of Columbia v. Feldman*, 460

U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Respectively termed *"Rooker–Feldman"* and *"Younger"*.

### IV. Analysis

At the outset the Court notes that neither party has clearly stated whether the Kotz application is open. Both parties argue in the alternative. The Court realizes that both seem to indicate that the "final action" of the board has been taken, that is, without the information demanded by the FMB, Kotz's application will not progress to licensure. The Court believes that the application would continue to be processed should Kotz supply the requested information and do the requested acts. Since an action on Kotz's part would effect the application, the Court does not think that the processes have "stopped". However, that having been said, the Court analyzes the question presented with both *Younger* and *Rooker–Feldman* because both are helpful in illustrating the Court's opinion.

#### A. Younger

The issue presented at this early stage is thus far unique in federal jurisprudence. The question is whether the *Younger* doctrine requires the Court to remove itself from the case at bar and allow the Florida Board of Medicine to proceed without federal interference. The question is novel and answering in the affirmative would require an extension of the *Younger* doctrine beyond its current metes.

The Supreme Court of the United States in its *Younger* decision stated that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation where an injunction is necessary to prevent a great and immediate irreparable injury. *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The stated reason for this holding was to pay proper respect to comity and the vital role that state courts play in our federal system. *Id.* at 627, 106 S.Ct. 2718. Since the decision in *Younger*, the doctrine has been extended from

simply applying to criminal prosecutions to other state proceedings. *Dayton.* The application of the Doctrine has been extended to state administrative proceedings in which "important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id.* at 627, 106 S.Ct. 2718.

The Eleventh Circuit has explained *Younger* and the understanding of the relationship between state and federal courts as follows:

> The state courts are courts of equal dignity with all of the federal "inferior courts"—to use the Framers' phrase—and state courts have the same duty to interpret and apply the United States Constitution as we do. If the state courts err in that respect, the remedy lies in review by the Supreme Court, the same place a remedy may be found if we err. Federal "inferior courts" have no more business issuing supervisory injunctions to safeguard federal constitutional rights in state court proceedings than state courts have issuing such injunctions to safeguard federal constitutional rights in federal court proceedings.

*Pompey v. Broward County,* 95 F.3d 1543, 1550 (11th Cir.1996). In *Middlesex County Ethics Committee v. Garden State Bar Assn.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) the Supreme Court discussed *Younger* abstention in the noncriminal state proceeding context (a state bar disciplinary proceeding), stating:

> The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved .... The importance of state interests may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature .... Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation .... Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of constitutional claims .... The pertinent ... inquiry is whether the state proceedings afford an adequate

opportunity to raise the constitutional claims ....

The question in this case is threefold: first, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex,* 457 U.S. at 433, 102 S.Ct. 2515. The case law makes it clear that attempts to usurp the power of the state bar to decide issues of state bar licensing are within the *Younger* doctrine. More specifically, both post bar licensing disciplinary proceedings are covered and pre-licensing decisions are covered. The Supreme Court has also stated that, "we [(the Supreme Court of the United States)] have held that federal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court." *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986)(reviewing the case law of *Younger*'s progeny and citing *Middlesex County Ethics Committee v. Garden State Bar Assn.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).

The Defendants in this case have pointed to several cases which address *Younger* abstention, bar ethics cases and the American's with Disabilities Act. Additionally, the Court has located cases dealing with this subject and the cases are illuminating in the present context. The cases typically involve an attorney that has gotten into trouble and then attempted to redress his grievances with the state bar in a federal court. *See Fieger v. Thomas,* 74 F.3d 740 (6th Cir.1996); *Hirsh v. Justices Of California Supreme Court,* 67 F.3d 708 (9th Cir.1995); *American Civil Liberties Union v. The Florida Bar,* 999 F.2d 1486, 1493 (11th Cir.1993); *Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589, 595 (7th Cir.1992); *Tindall v. The Florida Bar,* 1997 WL 689636 (M.D.Fla.1997). Additionally there are cases which address the ADA in

the context of bar admissions processes. *See McCready v. Michigan State Bar Standing Committee on Character and Fitness,* 926 F.Supp. 618 (W.D.Mich.1995), *aff'd* 100 F.3d 957(6th Cir.1996); *Johnson v. State of Kansas,* 888 F.Supp. 1073 (D.Kan.1995). These two types of cases generally hold that a federal court should not involve itself in the bar administrative process because in almost all cases: the aggrieved is able to present constitutional arguments; there are important state issues in play; they are run by lawyers; and, the bars themselves are extensions of the state judicial systems and thus capable of properly addressing the legal arguments presented.

Less clear under the case law is the treatment of medical licensing issues in the *Younger* context. *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) is helpful in the present controversy. The Supreme Court in *Gibson* examined a situation in which the Alabama Board of Optometry ("Board") attempted to bring charges against optometrists for performance of work for retail eyeglass outlets. More generally, the Board considered it unprofessional conduct to work for a commercial outlet. Prior to conclusion of the disciplinary proceedings before the Board of Optometry, the Board filed suit in state court requesting injunction against the non-self-employed optometrists preventing them from working for eyeglass outlets. The injunction was granted and official Board proceedings were recommenced. The optometrists subject to discipline argued that the Board's actions were unconstitutional and filed a complaint in federal court claiming that 42 U.S.C. § 1983 was being violated and requesting an injunction. The primary complaint of the optometrists was that the Board was biased and would not afford them a fair and impartial hearing in conformity with due process of law. *Gibson,* 411 U.S. at 570, 93 S.Ct. 1689. A three judge panel was convened to consider the complaint.

The panel determined that the Board was a suspect adjudicative body because 92 of the 192 practicing optometrists in Alabama were excluded from membership on the Board because they were not self-employed. The dis-

trict court also noted that the optometrists would experience a significant boon in their business should the licenses of the non-self-employed be revoked. The Supreme Court quoted the district court as stating "that to require the Plaintiffs to resort to the protection offered by state law in these cases would effectively deprive them of their property, that is, their right to practice their professions, without due process of law and that irreparable injury would follow in the normal course of events." *Gibson,* 411 U.S. at 571, 93 S.Ct. 1689. The Supreme Court heard the appeal of the Board of Optometry and reviewed in order to determine if the district court had violated the *Younger* Doctrine.

The Supreme Court explained that the Board of Optometry's argument that *Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971) required the district court to absent itself from the controversy was unpersuasive. *Geiger* dealt with a doctor who was suspended by the State Medical Board of Georgia after being accused of "having solicited, committed, or otherwise participated in acts of sodomy, unlawful sales of dangerous drugs, use of stolen credit cards, theft by receiving stolen property, and various other unlawful acts." *Geiger v. Jenkins,* 316 F.Supp. 370, 371 (N.D.Ga.1970). The district court in that case held that *Younger* required the federal court to allow the state court proceedings to continue. The Supreme Court subsequently affirmed the district court summarily under *Younger.* The Supreme Court explained in *Gibson* that in the *Geiger* case not only were the medical revocation proceedings considered to be quasi-criminal under Georgia law, but also criminal charges were pending against Geiger at the time. *Id.* at 577–8, 93 S.Ct. 1689. Both of these factors supported the *Geiger* district court's decision under *Younger.*

After dismissing the Alabama Board of Optometry's *Geiger* argument, the Supreme Court went on to uphold the decision of the Alabama district court. The Supreme Court explained that in *Gibson* the District Court was correct when it determined that the Alabama Board was biased and that *Younger* did not require abstention. The Supreme Court explained that abstention was not re-

quired "simply because judicial review, de novo or otherwise, would be forthcoming at the conclusion of the administrative proceedings." *Id.* at 577, 93 S.Ct. 1689.

From the *Gibson* and *Geiger* cases it becomes clear that state medical licensing board disciplinary proceedings may be within *Younger* if a proper showing of their nature is made. That is, when the medical licensing boards intend to address disciplinary problems in most situations they are entitled to federal court respect for the integrity of their proceedings if they are quasi-criminal and demonstrate parallels to court proceedings. However, neither *Geiger* nor *Gibson* addressed whether a question of medical licensing, at the outset, requires *Younger* abstention.

Since the Supreme Court handed down these two cases, it has continued to expand the *Younger* doctrine. As discussed above, the Supreme Court has been clear in holding that most bar proceedings command *Younger* respect. The clearest and primary statement of this idea is in the Supreme Court's *Middlesex* decision. The Court notes the reasons that the Supreme Court found respect due the state proceedings were: 1) the plaintiff in that situation was able to present his claims to the ethics committee; 2) that most of the ethics committee members were lawyers; and 3) the plaintiff failed to respond to the ethics complaint brought against him.

The next major development of the *Younger* Doctrine came from the Supreme Court in its *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) decision. The *Dayton* case revolved around a teacher at a Christian school who chose to contest an adverse employment decision to the Ohio Civil Rights Commission. The school responded to the proceedings of the Civil Rights Commission by filing a complaint in federal court alleging the Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution prohibited the Ohio Civil Rights Commission from exercising jurisdiction over the school. The Supreme Court of the United States ultimately decided that the district court should have abstained from exercising jurisdiction under *Younger* because the proceedings were the type deserving respect under *Younger* analysis.[1] In so doing, the Supreme Court stated in passing that "it is sufficient under *Middlesex* ... that constitutional claims may be raised in state-court judicial review of the administrative proceeding." Reading the actual text of *Middlesex* reveals that the statement was with reference to the

---

1. It should be noted that the expansion of Younger has not been without opponents. This is illustrated by the footnote to the concurrence to the majority opinion in *Dayton*. Justice Stevens, with whom Justice Brennan, Justice Marshall, and Justice Blackmun joined, stated in full in Footnote 5:

 I do not agree with the majority that the doctrine of abstention associated with *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), required the District Court to dismiss appellees' complaint. That disposition would presumably deny the School a federal forum to adjudicate the constitutionality of a provisional administrative remedy, such as reinstatement pending resolution of the complainant's charges, even though the constitutional issues have become ripe for review by the Commission's entry of a coercive order and the Commission refuses to address the merits of the constitutional claims. *Younger* abstention has never been applied to subject federal-court plaintiff to an allegedly unconstitutional state administrative order when the constitutional challenges to that order can be asserted, if at all, only in state-court judicial review of the administrative proceeding. *See Steffel v.*

 *Thompson*, 415 U.S. at 462, 94 S.Ct. at 1217 (holding that *Younger* abstention is inappropriate when no state-court proceeding is "pending at the time the federal complaint is filed," because in that circumstance "federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system"; it cannot "be interpreted as reflecting negatively upon [a] state court's ability to enforce constitutional principles"; "and the absence of a pending state-court proceeding deprives the federal plaintiff [of] a concrete opportunity to vindicate his constitutional rights") *See Middlesex County Ethics Committee v. Garden State Bar Assn.*, 457 U.S. 423, 437, 102 S.Ct. 2515, 2524, 73 L.Ed.2d 116 (1982)(requiring abstention where "an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceeding on the merits in federal court"(citation omitted)).
 The expansion of *Younger* has also been criticized by other noted commentators. See Erwin Chemerinsky, Federal Jurisdiction § 13.3.4 (1994)(discussing extension of the *Younger* doctrine and proffering Laurence Tribe, *American Constitutional Law* 207 (2d Ed.1988)).

subsequent state court proceedings which would review the decision of the New Jersey Bar. *Middlesex,* 457 U.S. at 436, 102 S.Ct. 2515.

The Court sees the *Middlesex* and *Dayton* decisions as being the state of the art in the *Younger* doctrine arena. However, the Court also sees that the two decisions seemingly conflict with the *Gibson* case. The Supreme Court in *Gibson* stated unequivocally that "Nor, in these circumstances, would a different result be required simply because judicial review, *de novo* or otherwise, would be forthcoming at the conclusion of the administrative proceedings." *Gibson,* 411 U.S. at 577, 93 S.Ct. 1689. That is, since the district court found bias on the part of the Medical Licensing Board in that case, the district court was not required to sit back and allow the biased proceeding to continue and wait for the state review process to correct the error. The *Dayton* and *Middlesex* cases seem to so require. These three cases may be reconciled by noting that a biased or "sham" proceeding may not require abstention. However, here there has been no allegation of either bias or a sham or even inability to present constitutional (and federal law) issues.

After much contemplation, the Court believes it is bound to withhold its entry into this controversy and must allow the state proceedings to continue. The Supreme Court's expansion of the *Younger* doctrine seems to not allow otherwise. As such, this case is due to be **DISMISSED.**

### B. Rooker–Feldman

 The Defendants in this case also argue that the *Rooker–Feldman* Doctrine applies and thereby prevents the Court from hearing this case. *Rooker–Feldman* originated from the *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and the *District of Columbia v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) cases. The *Rooker–Feldman* Doctrine prohibits United States Courts from reviewing final state court judgments and reserves the right to review such judgments to the United States Supreme Court. *Feldman; See also Jones v. Crosby,* 137 F.3d

1279 (11th Cir.1998); *Dale v. Moore,* 121 F.3d 624 (11th Cir.1997); *Powell v. Powell,* 80 F.3d 464 (11th Cir.1996). An exception to this doctrine exists when a plaintiff had no reasonable opportunity to raise federal claims in state proceedings. *See Powell,* 80 F.3d at 467 (citing *Wood v. Orange County,* 715 F.2d 1543 (11th Cir.1983)).

The Court does not think that the decision of the FMB in this case is a "final state court judgment"—even if broadly defined. The Court expressly makes no determination as to whether *Rooker–Feldman* would apply if the FMB were to be construed as deserving treatment as a "final state court judgment". Additionally, the Court expressly does not find whether the actions of the FMB are "final" in the *Rooker–Feldman* sense. However, the Court does note that the Defendant may be inconsistent in its opinion as to the finality of the FMB licensing process because it stated " . . . Kotz elected to truncate the state proceedings and inappropriately seek federal court intervention in an ongoing matter of important state interest." Defendant's Motion, Doc. # 6 at 11.

### C. Eleventh Amendment Protection

The Defendant's argument that the Eleventh Amendment was not waived by Congress need not be addressed.

### D. Motion to Dismiss for Failure to State a Claim

The Defendant also asserts that the Plaintiff failed to state a claim under the Americans with Disabilities Act. This argument need not be addressed.

Upon Due Consideration, it is Accordingly

**ORDERED and ADJUDGED:**

1. Defendants' *Motion to Quash and Dismiss* (Doc. # 6) is **GRANTED.**

2. The **CLERK** is **DIRECTED** to **CLOSE** this **FILE.**